PATIENCE DRAKE ROGGENSACK, J.
¶ 1. We review a decision of the court of appeals[1] reversing, in part, an order of the circuit court[2] that dismissed the Second Amended Complaint because it failed to state a claim upon which relief could be granted. Plaintiffs claim that defendants violated their fiduciary duties to the minority shareholder by selling Renaissance Learning, Inc. to Permira Advisers, LLC.[3] Defendant directors contend that plaintiffs have not pled facts suffi *670 cient to show that they are entitled to relief because they have not pled around the business judgment rule, codified at Wis. Stat. § 180.0828 (2011-12).[4] As to the majority shareholders, they claim that plaintiffs have likewise failed to plead facts sufficient to show that they are entitled to relief.
¶ 2. We conclude that Wis. Stat. § 180.0828(1) unequivocally sets forth the terms on which directors may be held liable for their decisions. The business judgment rule is both a substantive law and a procedural device by which to allocate a burden. Reget v. Paige, 2001 WI App 73, ¶¶ 17-18, 242 Wis. 2d 278, 626 N.W.2d 302 (the rule "immunize[s] individual directors from liability and protects the board's actions" and "creates an evidentiary presumption that the acts of the board of directors were done in good faith"). As such, a party challenging the decision of a director must plead facts sufficient to plausibly show that he or she is entitled to relief, i.e., facts that show the director's actions constitute: a "willful failure to deal fairly" with a "shareholderG in connection with a matter in which the director has a material conflict of interest"; a "violation of criminal law"; a "transaction from which the director derived an improper personal profit"; or "[w]illful misconduct." § 180.0828(l)(a)-(d). This is a straightforward application of notice pleading standards to the substantive law of the case because substantive law drives what facts must be pled.
*671 ¶ 3. The Second Amended Complaint does not plead facts sufficient to plausibly show that the directors' actions come within the terms of potential liability, or that Judith and Terrance Paul (the Pauls) received an improper material benefit at the expense of the minority shareholders. Accordingly, we reverse the decision of the court of appeals in regard to the issues presented to us for review.
I. BACKGROUND
¶ 4. This lawsuit arises out of the merger and sale (hereinafter sale) of Renaissance Learning, Inc., a publicly traded corporation. Plaintiffs are Data Key Partners, a partnership whose type is not apparent from the pleadings, and three partners, Lawrence Bass, Paul Berger and Robert Garfield. The partners allege indirect interests in Renaissance due to the shares of Renaissance that Data Key Partners owned.
¶ 5. The Pauls are the founders of Renaissance. They were directors of Renaissance and controlled 69 percent of outstanding Renaissance shares at the time of the sale. Defendants Addison Piper, Harold Jordan, Mark Musick, Randall Erickson and Glenn James also were directors of Renaissance at the time of the challenged transaction (hereinafter non-Paul directors).
¶ 6. Defendants Permira Advisers LLC, Raphael Holding Company and Raphael Acquisition Corporation are business organizations involved in the purchase of Renaissance. The claims made against all defendants for failure to disclose and against these corporate defendants for aiding and abetting are not part of this review.[5] (Counts III and I\( Second Amended Complaint.)
*672 ¶ 7. The Pauls decided to sell their interest in Renaissance. Permira approached Renaissance, and made several offers to purchase the entire company. In its final offer, Permira offered to pay $15 per share to the Pauls and $16.60 per share to the minority shareholders. Renaissance's board of directors approved Permira's offer and Renaissance's shareholders accepted it, with the sale set to close October 19, 2011. As part of Permira's contract with Renaissance, Renaissance was obligated to pay a $13 million penalty if Renaissance cancelled the sale to Permira.
¶ 8. On September 27, 2011, after the agreement to sell Renaissance to Permira was reached, Plato Learning, Inc. began a bidding war. In one bid, Plato offered to purchase Renaissance for a payment to the Pauls of $15.10 per share and a payment to minority shareholders of $18 per share. That bid was not accepted. As a final bid, Plato offered $16.90 per share for all shareholders' interests, with no difference between minority and majority shares. This last offer would have netted the Pauls roughly $38 million more than the sale to Permira. It also was rejected, but not before plaintiffs sued to stop the Permira sale.
¶ 9. On October 7, 2011, plaintiffs sued in federal district court, claiming violations of the Securities Exchange Act of 1934 and breach of defendants' fiduciary duty. They sought to enjoin the sale to Permira. On *673 October 14, 2011, the federal district court denied plaintiffs' motion to enjoin the sale, concluding that plaintiffs did not have "any likelihood of success" on the merits of their claims. Plaintiffs withdrew the federal claims, thereby raising a question of whether the federal court had jurisdiction. On November 28, 2011, the federal case was dismissed.
¶ 10. On September 23, 2011, plaintiffs commenced the lawsuit that is now before us in Wood County. Plaintiffs contend that Renaissance directors, which include the Pauls, breached their fiduciary duty to the minority shareholders. (Count I, Second Amended Complaint.) Plaintiffs also contend that defendants "are not entitled to any protection of Sec. 180.0828, Wis. Stat. or any protective provision in the Company's Articles of Incorporation or Bylaws."[6]
¶ 11. Plaintiffs further contend that the Pauls breached their fiduciary duty as majority shareholders by choosing to sell their majority interest in Renaissance to Permira. (Count II, Second Amended Complaint.) Plaintiffs alleged that the "Pauls have put. . . their personal interest in monetizing their holdings in the Company . . . ahead of that of the Company and the Company's minority shareholders."[7]
¶ 12. The circuit court heard argument that Plato's offer was subject to many contingencies, and that the board of directors of Renaissance was concerned that Plato could not fulfill them in the time remaining before the sale to Permira was set to close. The Pauls supported the transaction with Permira *674 because it was more certain to result in an actual sale for all shareholders and because Renaissance would be subject to a $13 million penalty if Renaissance's contract with Permira was breached. Renaissance was sold, and the sale netted the minority shareholders a 40 percent premium on the value of their shares when compared with the public exchange price prior to the bidding war. Because of the difference in the per share price paid to minority and majority shareholders, the minority shareholders received $10 million more than what they would have received if all shareholders were paid the same per share price by Permira.
¶ 13. Based on this information, the circuit court dismissed the Second Amended Complaint after concluding that it failed to state a claim upon which relief can be granted. The court reasoned that the business judgment rule protected the directors' actions and that the Pauls violated no legal duty when they chose to sell Renaissance to Permira.
¶ 14. The court of appeals reversed in part.[8] Data Key Partners v. Permira Advisers LLC, 2013 WI App 107, 350 Wis. 2d 347, 837 N.W.2d 624. It concluded that there were sufficient facts alleged to show breach of fiduciary duty claims against the directors and the Pauls. (Counts I and II, Second Amended Complaint.) The court of appeals criticized the circuit court for noting that there was a reasonable inference that a deal with Plato might not close and concluded that the business judgment rule should not be used to dismiss a complaint. Id., ¶ 23.
¶ 15. We granted defendants' petition for review, and now reverse the court of appeals on the claims presented to us for review.
*675 II. DISCUSSION
¶ 16. Before us, plaintiffs contend that defendants, in their role as directors of Renaissance, breached their fiduciary duty to minority shareholders when the sale to Permira occurred. Plaintiffs further contend that the Pauls, as majority shareholders, also breached their fiduciary duty to minority shareholders when they voted their shares in favor of the sale to Permira. Defendants raise the business judgment rule and the insufficiency of the facts pleaded in the Second Amended Complaint as requiring dismissal for failure to state a claim.
A. Standard of Review
¶ 17. Whether a complaint states a claim upon which relief can be granted is a question of law for our independent review; however, we benefit from discussions of the court of appeals and circuit court. DeBruin v. St. Patrick Congregation, 2012 WI 94, ¶ 10, 343 Wis. 2d 83, 816 N.W.2d 878.
¶ 18. When we review a motion to dismiss, factual allegations in the complaint are accepted as true for purposes of our review. Strict v. Converse, 111 Wis. 2d 418, 422-23, 331 N.W.2d 350 (1983). However, legal conclusions asserted in a complaint are not accepted, and legal conclusions are insufficient to withstand a motion to dismiss. John Doe 67C v. Archdiocese of Milwaukee, 2005 WI 123, ¶ 19, 284 Wis. 2d 307, 700 N.W.2d 180; Mitchell v. Lawson Milk Co., 532 N.E.2d 753, 756 (Ohio 1988).
*676 B. Well-Pleaded Complaint
¶ 19. "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." John Doe 1 v. Archdiocese of Milwaukee, 2007 WI 95, ¶ 12, 303 Wis. 2d 34, 734 N.W.2d 827 (quoting BBB Doe v. Archdiocese of Milwaukee, 211 Wis. 2d 312, 331, 565 N.W.2d 94 (1997)). Upon a motion to dismiss, we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom. Kaloti Enters., Inc. v. Kellogg Sales Co., 2005 WI 111, ¶ 11, 283 Wis. 2d 555, 699 N.W.2d 205. However, a court cannot add facts in the process of construing a complaint. John Doe 67C, 284 Wis. 2d 307, ¶ 19. Furthermore, legal conclusions stated in the complaint are not accepted as true, and they are insufficient to enable a complaint to withstand a motion to dismiss. Id.; Mitchell, 532 N.E.2d at 756. Therefore, it is important for a court considering a motion to dismiss to accurately distinguish pleaded facts from pleaded legal conclusions.
¶ 20. Wisconsin Stat. § 802.02(1) sets the requirements for a complaint if it is to withstand a motion to dismiss for failure to state a claim. Section 802.02(l)(a) provides:
General rules of pleading. (1) Contents of pleadings. A pleading or supplemental pleading that sets forth a claim for relief, whether an original or amended claim, counterclaim, cross claim or 3rd-party claim, shall contain all of the following:
(a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.
*677 ¶ 21. In order to satisfy Wis. Stat. § 802.02(l)(a), a complaint must plead facts, which if true, would entitle the plaintiff to relief. Strid, 111 Wis. 2d at 422-23 ("It is the sufficiency of the facts alleged that controls] the determination of whether a claim for relief is properly [pled]."). Bare legal conclusions set out in a complaint provide no assistance in warding off a motion to dismiss. See John Doe 67C, 284 Wis. 2d 307, ¶ 19. Plaintiffs must allege facts that, if true, plausibly suggest a violation of applicable law.[9]
¶ 22. In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court clarified what notice pleading requires in order to state a claim under Federal Rule 8(a)(2), the federal counterpart of Wis. Stat. § 802.02(l)(a).[10] Twombly involved a § 1 Sherman Act claim. Section 1 prohibits "restraints of trade . . . effected by a contract, combination, or conspiracy." Id. at 553 (quoting Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775 (1984)). The district court had dismissed the complaint for failure to state a claim because the complaint alleged "parallel behavior" without also alleging "additional facts that 'ten[ded] to exclude independent self-interested conduct as an explanation for defendants' parallel behavior.' "Id. at 552 (further citation omitted). The additional necessary facts were critical because self-interest in defending one's own territory, although *678 consistent with a violation, is not, in and of itself, contrary to the Sherman Act. Id.
¶ 23. The Court of Appeals for the Second Circuit reversed, concluding that the district court had tested the complaint "by the wrong standard." Id. at 553. The Second Circuit "held that 'plus factors are not required to be pleaded to permit an antitrust claim based on parallel conduct to survive dismissal.'" Id. (further citation omitted).
¶ 24. The Supreme Court disagreed. It concluded that while "a showing of parallel 'business behavior is admissible circumstantial evidence from which the fact finder may infer agreement,' it falls short of 'conclusively establish[ing] agreement or . . . itself constituting] a Sherman Act offense.'" Id. (quoting Theatre Enters., Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 540-41 (1954)).
¶ 25. The Supreme Court explained that the case before it presented the question "of what plaintiff must plead in order to state a claim under § 1 of the Sherman Act." Id. at 554-55. The Court explained that Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 555; Fed. R. Civ. E 8(a)(2). The Court explained that the district court had applied the correct standard because plaintiffs pleading obligation required "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 555. Furthermore, on a motion to dismiss, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (citation and internal quotation marks omitted).
¶ 26. The Court explained that "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the thresh *679 old requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 557 (emphasis added). In demonstrating the deficiency of alleging only parallel conduct as a Sherman Act violation, the Court instructed that, "it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" Id.
¶ 27. The Court instructed that plaintiffs were not free to ignore substantive law that governed their claim, and had to allege facts that suggested more than a "possibility" of a claim. Id. This was so because with a mere possibility as the standard "a plaintiff with a 'largely groundless claim' [would] be allowed to 'take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value.'" Id. at 557-58 (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005)). Given the potential for abuse, the Court held that "basic deficienc[ies] should... be exposed at the point of minimum expenditure of time and money by the parties and the court."[11] Id. at 558 (citation and internal quotation marks omitted).
¶ 28. To amplify the force of its decision, the Court overruled Conley v. Gibson, 355 U.S. 41 (1957). Twombly, 550 U.S. at 562-63. The passage oft quoted from Conley was: "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can *680 prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.
¶ 29. In overruling Conley, the Supreme Court clarified that this statement is not a correct statement of Federal Rule 8(a)(2)'s pleading requirements. Twombly, 550 U.S. at 563 (explaining that "this famous observation has earned its retirement[,]" as the "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). The Court explained that Conley's "no set of facts" language could be incorrectly read as saying that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings," when more facts actually are required to sufficiently state a claim that can proceed. Id. at 561.
¶ 30. The Supreme Court's decision in Twombly is consistent with our precedent. See, e.g., Strid, 111 Wis. 2d at 422-23 (concluding that "[i]t is the sufficiency of the facts alleged that controls] the determination of whether a claim for relief is properly [pled]").
¶ 31. In sum, Twombly makes clear the sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled. Plaintiffs must allege facts that plausibly suggest they are entitled to relief. With Twombly and Strid in mind, we turn to the substantive law that underlies plaintiffs' claims.
C. All Directors
1. Potential liability
¶ 32. As a general principle, a corporate director has a "fiduciary duty to act in good faith and to deal fairly in the conduct of all corporate business." Reget, *681 242 Wis. 2d 278, ¶ 12; Modern Materials, Inc. v. Advanced Tooling Specialists, Inc., 206 Wis. 2d 435, 442, 557 N.W.2d 835 (Ct. App. 1996). In Wisconsin, the business judgment rule "immunize[s] individual directors from liability and protects the board's actions from undue scrutiny by the courts." Reget, 242 Wis. 2d 278, ¶ 17 (citing Kenneth B. Davis, Jr., Once More, The Business Judgment Rule, 2000 Wis. L. Rev. 573 (2000)). Wisconsin's business judgment rule is codified in Wis. Stat. § 180.0828(1).[12]
¶ 33. The business judgment rule is substantive law because "acts of the board of directors done in good faith and in the honest belief that its decisions were in the best interest of the company" cannot form the basis for a legal claim against directors. Reget, 242 Wis. 2d 278, ¶ 18. Honest errors of judgment by directors cannot subject them to personal liability. Id., ¶ 17.
*682 ¶ 34. The business judgment rule is also procedural because it limits judicial review of internal corporate business decisions made in good faith. Einhorn v. Culea, 2000 WI 65, ¶ 19, 235 Wis. 2d 646, 612 N.W.2d 78; Reget, 242 Wis. 2d 278, ¶ 18 ("Procedurally, the business judgment rule creates an evidentiary presumption that the acts of the board of directors were done in good faith and in the honest belief that its decisions were in the best interest of the company."). In so doing, it precludes courts from second-guessing business decisions. Id. As we have explained:
[T]his court will not substitute its judgment for that of the board of directors and assume to appraise the wisdom of any corporate action. The business of a corporation is committed to its officers and directors, and if their actions are consistent with the exercise of honest discretion, the management of the corporation cannot be assumed by the court.
Steven v. Hale-Haas Corp., 249 Wis. 205, 221, 23 N.W.2d 620 (1946).
¶ 35. Wisconsin's codification of the business judgment rule, Wis. Stat. § 180.0828(1), provides the framework for analyzing whether the facts pled relative to directors' business decisions are sufficient to state a claim. This is so because § 180.0828(1) provides that "a director is not liable" unless the facts describing the director's actions constitute: (1) a "willful failure to
deal fairly" with a "shareholder[] in connection with a matter in which the director has a material conflict of interest"; (2) acts from which "the director derived an *683 improper personal profit"; or (3) "[w]illful misconduct." § 180.0828(l)(a), (c) and (d) (emphasis added).[13]
¶ 36. Stated otherwise, these exceptions to the substantive shield from liability for a director's actions identify potential breaches of a director's fiduciary duty. Accordingly, plaintiff must plead sufficient facts to plausibly show the director's acts fall within the parameters of Wis. Stat. § 180.0828(1) in order to survive a motion to dismiss.
¶ 37. This approach is not an addition to the requirements of notice pleading; rather, this framework applies notice pleading by requiring facts that show plaintiff is entitled to relief. See Twombly, 550 U.S. at 555 (explaining that plaintiff is required to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" and that "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (citation and internal quotation marks omitted)).
¶ 38. Twombly's analysis of pleading requirements is instructive of the pleading analysis that is required upon a claim that a director breached his or her fiduciary duty. To explain further, in Twombly, the pleading of "parallel action" was insufficient to state a claim because self-interest in protecting one's own territory by action parallel to that of another merchant did not contravene anti-trust law. Id. at 556-57. It is only when there is parallel action by agreement that the Sherman Act engages. Therefore, in order to state a claim under the Sherman Act, the pleader must allege *684 facts that create a plausible claim that parallel actions were taken by agreement. Id. at 557.
¶ 39. In a similar manner, not all directors' acts are subject to judicial review because of Wis. Stat. § 180.0828's limitation on director liability. In order to fall outside of the protection that the legislature has granted directors, plaintiffs must plead facts that create a plausible claim that the directors' acts were taken in contravention of § 180.0828(1). Therefore, to survive a motion to dismiss, plaintiffs must plead facts sufficient to plausibly show that the directors' actions constitute: (1) a "willful failure to deal fairly" with the minority shareholders on a matter in which the director has "a material conflict of interest"; (2) receipt of an "improper personal profit"; or (3) "[w]illful misconduct." § 180.0828(l)(a), (c) and (d).
¶ 40. A minority of jurisdictions have adopted a different approach, carving out an exception to notice pleading when the business judgment rule is at issue. Stephen A. Radin, The Business Judgment Rule: Fiduciary Duties of Corporate Directors, 58-61 (6th ed. 2009). A leading case taking this approach seems to be In re Tower Air, Inc., 416 F.3d 229 (3d Cir. 2005).[14] There, the court held that it generally would "not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)." Id. at 238. However, because the plaintiff raised the business judgment rule on the face of the complaint, the court held that he "must plead around the business judgment rule." Id.
*685 ¶ 41. Plaintiffs in the case before us also asserted the business judgment rule on the face of the Second Amended Complaint, claiming that the directors "are not entitled to any protection of Sec. 180.0828, Wis. Stat."[15] To support this contention, they repeated the legal conclusions set out in § 180.0828(1), arguing that the directors engaged in "willful misconduct by willfully failing to deal fairly with the Plaintiffs and the Company's other minority public shareholders in a matter in which they have a material conflict of interest."[16] They failed, however, to plead facts supporting those conclusions, as we explain in the application section. Therefore, we note that even if we were to adopt the approach of Tower Air, we would conclude that the Second Amended Complaint must be dismissed.
¶ 42. More importantly, we conclude that Tower Air's assertion that the pleadings must overcome the business judgment rule only when it is raised first in the complaint suffers from two fatal flaws. First, as we explained above, the business judgment rule is a rule of substantive law, not merely an affirmative defense to be raised in subsequent pleadings. See Kaye v. Lone Star Fund V (U.S.), L.P., 453 B.R. 645, 679 (N.D. Tex. 2011) (concluding that the protections of the business judgment rule are substantive and largely independent of the notice purpose of procedural rules of pleading).[17] Second, from a policy perspective, if plaintiffs could *686 bring claims that the business judgment rule precludes simply by not mentioning the rule in the complaint, plaintiffs would be given "a powerful and perverse incentive to 'dummy-up' about the obvious implications of the business judgment rule." Id. at 679-80 (citation omitted). This would promote unnecessary, meritless litigation.
¶ 43. Having explained that notice pleading requires plaintiffs to plead facts sufficient to avoid the business judgment rule, even when it is not raised on the face of the complaint, we now explain that plaintiffs have not done so.
2. Application
¶ 44. Plaintiffs' Second Amended Complaint is not completely devoid of facts. It contains facts showing that the Pauls and the other directors favored the sale to Permira, rather than pursuing Plato to see if a sale to Plato could be put together. It also alleges that the directors and the Pauls received benefits from the Permira sale, including the continuing ability to serve on the board, vesting of certain stock options, indemnification, and liquidity for retirement. We now explain, however, that these factual allegations are not enough because they fall far short of plausibly showing that plaintiffs are entitled to relief.
¶ 45. We begin with plaintiffs' allegation that the non-Paul directors were not disinterested decision-makers because the Pauls could, as majority shareholders, vote them off the board at any time.[18] This may imply that a desire to remain a director created a *687 material conflict of interest for the directors. However, if desiring to continue on as a director created a "material conflict of interest" and evidenced "willful failure to deal fairly with shareholders," no director would be protected by the business judgment rule because each director consents to serve, thereby evidencing a desire to be a board member. Therefore, a plaintiff may not rebut the business judgment rule by "merely alleg[ing] that a certain decision might lead to the potential of giving a director a longer tenure on the board of directors." Wash. Bancorporation v. Said, 812 F. Supp. 1256, 1268 (D.D.C. 1993).
¶ 46. Additionally, because the directors each owned shares in the company, any benefit they would receive in their fees as directors may not have been material, as the fees could be offset by a decrease in the value of their shares if they made a poor decision in regard to selling. See generally McGowan v. Ferro, 859 A.2d 1012, 1030 (Del. Ch. 2004). Contrary to plaintiffs' characterization, "stockholdings in a company by directors create powerful incentives to get the best deal in the sale of that company." Id.
¶ 47. Plaintiffs also allege that the directors breached their duty by supporting the sale to Permira because the Pauls would not support a potential sale to Plato.[19] This allegation fails for at least three reasons. First, a "controlling interest of majority stock ownership does not deprive the corporation's directors of the 'presumptions of independence.'" Weinstein Enters., Inc. v. Orloff, 870 A.2d 499, 512 (Del. 2005) (quoting Aronson v. Lewis, 473 A.2d 805, 815 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000))).
*688 ¶ 48. Second, "allegations challenging the independence of directors fail when the directors alleged to lack independence are not beholden to anyone who is interested in the transactions challenged." Radin, supra, at 108 (citation and internal quotation marks omitted). As we explain in the next section, plaintiffs have failed to show that the Pauls acted improperly. It matters not, then, if the directors deferred to the Pauls.
¶ 49. Most importantly, the pleadings do not show that the directors' actions were not the product of business judgment. The bids from Plato were far from creating a certain sale. In this regard, the directors considered Plato's bids, and they also considered the significant risks associated with an evaluation that would be occurring in the eleventh hour, as the Permira sale was only days away from closing and contained a $13 million penalty if Renaissance backed out of that deal to try to put together a sale to Plato.
¶ 50. The sale of a corporation of this size would involve numerous documents, the terms of which would require negotiation if a new buyer were chosen; new proxy statements would have to be submitted to and reviewed by the Securities and Exchange Commission, to state only a few tasks that trailed along after Plato began its bidding war.[20] Furthermore, no sale could go forward without the Pauls' support; they controlled 69 percent of the shares. The directors could in good faith conclude that a bird in the hand was worth two in the bush. There is nothing improper about such a decision. See Tower Air, 416 F.3d at 239 (when it is apparent at pleading that there is "an ostensibly legitimate business purpose for an allegedly egregious decision," the complaint should be dismissed).
*689 ¶ 51. Next, plaintiffs allege that the directors obtained a benefit when the directors' restricted shares vested upon the sale of Renaissance to Permira.[21] However, the record shows that the shares would vest "upon termination of. . . service as a director," regardless of to whom Renaissance was sold.[22] In this regard, the court of appeals appears to have added facts to those plead, contrary to our direction in John Doe 67C, 284 Wis. 2d 307, ¶ 19, when it asserted that ¶ 62 of the Second Amended Complaint "supports a reasonable inference that the directors would have received this [vesting] benefit only from a sale to Permira." Data Key, 350 Wis. 2d 347, ¶ 28. The Second Amended Complaint never alleges that vesting would occur only upon a sale to Permira.
¶ 52. In coming to its conclusion about stock vesting, the court of appeals' rationale also is inconsistent. The court of appeals says that the plaintiffs may "concede" that vesting would be available on the sale of Renaissance to any purchaser, not just upon a sale to Permira. Id., ¶ 29. However, the court of appeals then discounts plaintiffs' concession and instead employs vesting as a basis for refusing to dismiss the claim against the non-Paul directors. Id.
¶ 53. Plaintiffs also alleged that the directors obtained rights of indemnification from the sale to Permira.[23] They do not assert that this benefit would occur only upon the sale to Permira. Furthermore, this allegation cannot satisfy any term of potential liability in Wis. Stat. § 180.0828(1) because Wis. Stat. § 180.0851 generally requires "mandatory indemnification" for cor *690 porate directors when sued for actions taken as a director. See also Malpiede v. Townson, 780 A.2d 1075, 1085 (Del. 2001) (explaining that "[ejxcept in egregious cases, the threat of personal liability for approving a merger transaction does not in itself provide a sufficient basis to question the disinterestedness of directors because the risk of litigation is present whenever a board decides to sell the company.").
¶ 54. To explain further, the exceptions from mandatory indemnification under Wis. Stat. § 180.0851 are the same as the four exceptions set out in Wis. Stat. § 180.0828(1). § 180.0851(2). Therefore, plaintiffs must allege facts sufficient to show that indemnification was not required due to the same terms of potential liability as are set out in § 180.0828 in regard to the business judgment rule.
¶ 55. Legislatures, including Wisconsin's, enacted statutory provisions requiring director indemnification because directors often were sued for actions taken on behalf of corporations and that litigation was causing directors to resign and to refuse to serve on boards of directors. See A Comprehensive Approach: Director and Officer Indemnification in Wisconsin, 71 Marq. L. Rev. 407, 411 n.23 (1988). "The director and officer liability crisis of recent years has led to the expansion of corporate laws which give added protection to corporate officials who act within the scope of their corporate duties." Id. at 407.
¶ 56. In sum, plaintiffs have not plead facts sufficient to set forth a plausible claim that the directors' actions leading up to the sale to Permira fall within the terms of potential liability set out in § 180.0828(1). Plaintiffs have not pleaded facts that, if true, would constitute a "willful failure" to deal fairly with minority shareholders on matters in which the directors had a *691 "material conflict of interest"; or that the directors received an "improper personal profit"; or that their actions demonstrated "willful misconduct." Accordingly, the Second Amended Complaint in regard to directors' actions must be dismissed.
D. Majority Shareholders
¶ 57. The business judgment rule, as codified in Wis. Stat. § 180.0828, applies by its terms to officers and directors. There is no mention of protection for majority shareholders. Therefore, we do not look to § 180.0828 in regard to plaintiffs' claims against the Pauls in their role as majority shareholders of Renaissance.
¶ 58. Plaintiffs' claim against the Pauls is grounded in the Pauls' vote to sell Renaissance to Permira. However, unless restricted by the articles of incorporation or a statute, and the Second Amended Complaint contains no such allegation, each outstanding share "is entitled to one vote on each matter voted on at a shareholders' meeting." Wis. Stat. § 180.0721. Therefore, the Pauls had a statutory right to vote their shares in approval of the sale to Permira. Accordingly, any limitation on the Pauls' statutory right to vote their shares as they saw fit must be a common law limitation.
¶ 59. Under common law, majority shareholders have a very limited fiduciary duty to minority shareholders. Simply stated, majority shareholders cannot use their voting power to require corporate action that grants majority shareholders an improper material benefit at the expense of minority shareholders. Notz v. Everett Smith Group, Ltd., 2009 WI 30, ¶ 4, 316 Wis. 2d 640, 764 N.W.2d 904 (concluding that "majority share *692 holders' appropriation of the due diligence paid for by the corporation [was a] constructive dividend to the majority shareholder[s]" at the expense of minority shareholders, thereby supporting a breach of majority shareholders' fiduciary duty); Theis v. Durr, 125 Wis. 651, 661-62, 104 N.W. 985 (1905) (concluding that the corporate resolution that reduced the amount of capital stock in the corporation benefitted the majority shareholders, who owed subscription debt, at the expense of the minority shareholders, who had fully paid for their shares).
¶ 60. Plaintiffs contend that the Pauls' receipt of a non-exclusive, non-transferrable license to employ Renaissance's software for the internal educational use of the Pauls' family was the receipt of an "improper personal profit," through which the Pauls breached their fiduciary duty to the minority shareholders.[24] However, nowhere in the Second Amended Complaint do the plaintiffs allege that this non-exclusive, nontransferrable license is worth more than the $10 million bonus that the minority shareholders received. Accordingly, because the Pauls may receive benefits in addition to cash payments for their shares so long as the benefits are not achieved at the expense of the minority shareholders, and because there is no allegation that this license was worth more than the $10 million minority shareholder bonus, plaintiffs have not pled facts that plausibly demonstrate that the Pauls received an improper material benefit at the expense of minority shareholders.
¶ 61. Plaintiffs also allege that the Pauls' personal banker was involved in the sale. They do not explain, however, how the personal banker's services benefitted *693 the Pauls. Nor do they allege that the personal banker engaged in any kind of improper behavior or had something to gain from the Permira sale rather than a sale to Plato. See generally, McMillan v. Intercargo Corp., 768 A.2d 492, 496 (Del. Ch. 2000) (director who was a partner in a law firm that participated in a merger was not "interested" because "[n]othing in the complaint indicates that [the director or firm] stood to obtain legal work [from the company] after the merger"). Again, we fail to see how this allegation shows that plaintiffs are entitled to relief.
¶ 62. Finally, plaintiffs allege that the Pauls breached their fiduciary duty by putting "their personal interest in monetizing their holdings in the Company . . . ahead of that of the Company and the Company's minority shareholders."[25] There is no allegation that Renaissance was sold at fire-sale prices or that the Pauls were facing a financial emergency that required them to sell their interest in Renaissance quickly. Without pleading additional facts, the allegation that the Pauls wanted to sell their interest cannot support the conclusion that they caused the corporation to provide them with an improper material benefit at the expense of the minority shareholders.
¶ 63. In re Synthes, Inc. Shareholder Litigation, 50 A.3d 1022 (2012), provides a useful comparison with the case now before us. There, a Delaware court considered a minority shareholder's claim for breach of duty based on conduct of the majority shareholder. Id. at 1024. The majority shareholder and founder of Synthes was ready to retire and wanted to divest his stockholdings in Synthes. Id. at 1025. In the lawsuit that followed Synthes' sale, plaintiffs alleged that the *694 majority shareholder breached his fiduciary duty because minority shareholders received the same equity and cash payment per share as did the majority shareholders, rather than a full cash payment. Id. at 1039. In dismissing the complaint for failing to plead facts sufficient to state a claim, the court instructed that because the minority and majority shareholders received pro rata payment when the majority shareholder could have sought a premium for his controlling interest, the majority shareholder was in a safe harbor from litigation. Id. at 1024.
¶ 64. The Pauls' sale of their controlling interest in Renaissance is on all fours with the majority shareholder's sale of his interest in Synthes. Both were founders of the corporations; both wanted to retire; neither had a pressing need to sell their interests at fire-sale prices; neither received more per share than did the minority shareholders. As with the sale of Synthes, plaintiffs here have stated no claim that prevents the Pauls' from coming within the safe harbor, as the minority shareholders received more than a pro rata payment — they received a premium. Accordingly, we conclude that the Second Amended Complaint fails to state a claim upon which relief can be granted in regard to the Pauls and accordingly, it must be dismissed in its entirety.
III. CONCLUSION
¶ 65. We conclude that Wis. Stat. § 180.0828(1) unequivocally sets forth the terms on which directors may be held liable for their decisions. It is both a substantive law and a procedural device by which to allocate a burden. Reget, 242 Wis. 2d 278, ¶¶ 17-18 *695 (the rule "immunized] individual directors from liability and protects the board's actions" and "creates an evidentiary presumption that the acts of the board of directors were done in good faith"). As such, a party challenging the decision of a director must plead facts sufficient to plausibly show that they are entitled to relief, i.e., facts that show the director's actions constituted: a "willful failure to deal fairly" with a "shareholder[] in connection with a matter in which the director has a material conflict of interest"; a "violation of criminal law"; a "transaction from which the director derived an improper personal profit"; or "[w]illful misconduct." § 180.0828(l)(a)-(d). This is a straightforward application of notice pleading standards to the substantive law of the case because substantive law drives what facts must be pled.
¶ 66. The Second Amended Complaint does not plead facts sufficient to plausibly show that the directors' actions come within the terms of potential liability, or that the Pauls received an improper material benefit at the expense of the minority shareholders. Accordingly, we reverse the decision of the court of appeals in regard to the issues presented to us for review.
By the Court. — The decision of the court appeals is reversed.

 Data Key Partners v. Permira Advisers LLC, 2013 WI App 107, 350 Wis. 2d 347, 837 N.W.2d 624.

 The Honorable Jon M. Counsell of Wood County presided.

 The Second Amended Complaint reflects that plaintiffs are the entity, Data Key Partners, and "partners of Data Key Partners" who are suing individually because Data Key Partners *670 "owned shares of Renaissance's common stock." Second Amended Complaint, ¶ 10. The caption, however, indicates that the partners are suing on behalf of the entity, Data Key Partners.

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 Plaintiffs claimed that the directors failed to disclose necessary information in the proxy statement, such as the *672 Pauls' relationship to Goldman Sachs, a commercial banking firm that the directors hired to handle the financial aspects of the transaction. Plaintiffs also claimed Permira aided and abetted the directors and the Pauls in breaching their obligations to minority shareholders. The circuit court dismissed these claims and the court of appeals affirmed that dismissal. Data Key, 350 Wis. 2d 347, ¶¶ 47-59. The plaintiffs have not sought review of the court of appeals decision; accordingly, these two claims are not before us.

 Second Amended Complaint, ¶ 27. As we mentioned previously, Wis. Stat. § 180.0828 is Wisconsin's codification of the business judgment rule, which is central to the directors' actions in regard to the sale of Renaissance.

 Id., ¶ 30.

 See supra, note 5.

 Factual assertions are evidenced by statements that describe: "who, what, where, when, why, and how." See State v. Allen, 2004 WI 106, ¶ 23, 274 Wis. 2d 568, 682 N.W.2d 433.

 Subsection 1 of Wis. Stat. § 802.02 is based on Federal Rule 8(a). Charles D. Clausen & David P Lowe, The New Wisconsin Rules of Civil Procedure: Chapters 801-803, 59 Marq. L. Rev. 1, 37 (1976).

 The Supreme Court recognized that discovery in civil cases "accounts for as much as 90 percent of litigation costs when discovery is actively employed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007).

 Wisconsin Stat. § 180.0828(1) provides as follows:
Limited liability of directors. (1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:
(a) A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.
(b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.
(c) A transaction from which the director derived an improper personal profit.
(d) Willful misconduct.

 Wisconsin Stat. § 180.0828(l)(b) addresses a violation of criminal law. There is no such contention here, so we do not address it in this opinion.

 In re Tower Air, Inc., 416 F.3d 229 (3d Cir. 2005), was decided before Twombly.

 Second Amended Complaint, ¶ 27.

 Id

 See also NCS Healthcare, Inc. v. Candlewood Partners, LLC, 827 N.E.2d 797, 802-03 (Ohio Ct. App. 2005) ("Fed. R. Civ. P. 12(b)(6) and Del. Ch. R. 12(b)(6) are textually identical," and therefore, a plaintiff must allege "facts sufficient to overcome the business-judgment-rule protections" under state law).

 Second Amended Complaint, ¶ 5.

 Id, ¶ 25.

 Petitioners' Brief, p. 31.

 Second Amended Complaint, ¶¶ 26, 62(a).

 Renaissance's filing with Securities and Exchange Commission, Appellant's Supplemental Appendix, pp. 110-11.

 Second Amended Complaint, ¶ 62(e).

 Id., ¶ 62(b).

 Id., ¶ 30.