KESSLER, J.
*455 ¶ 1 Richard Zecchino and Adams Outdoor Advertising Limited Partnership (collectively, "Adams"), appeal an order of the circuit court dismissing its action against the Dane County Board of Supervisors and certain members of the Board regarding the renewal of a billboard lease. Adams's action alleged violations of the open meetings law and sought certiorari review and declaratory relief. We affirm the circuit court.
BACKGROUND
¶ 2 Adams leased three billboards near the Dane County Regional Airport. The lease expired on December 31, 2015. Prior to expiration, Adams sought to renew the lease and began negotiations with the Airport's business manager and director. The Airport Commission, the Public Works Committee, and the Personnel and Finance Committee all voted in support of renewing Adams's lease. However, on April 7, 2016, the County Board rejected the lease in an 18-16 vote.
¶ 3 Adams then brought the action underlying this appeal. In an amended complaint, Adams alleged that prior to the April 7, 2016 vote, a number of board members engaged in closed discussions with the purpose *456 of negatively affecting the vote on the lease. Specifically, the complaint alleged that Board Supervisor Paul *205 Rusk emailed multiple other board supervisors prior to the vote and that he tried to call another supervisor, Diane Krause, to discuss her vote. The emails at issue include:
• A December 2, 2015 email from Rusk to Supervisors Sharon Corrigan and Jeff Pertl asking "[w]hat do [they] think about doing away with these billboards?" and telling Corrigan and Pertl that he personally opposed them. Only Pertl responded, telling Rusk that he did not have a strong opinion about the issue and deferred to Rusk.
• A December 3, 2015 email from Rusk to Supervisors David de Felice, Andrew Schaer, and George Gillis, in which Rusk tells the other supervisors that he asked three neighborhood associations for input and all three opposed the billboards. Only de Felice responded, stating "I support removal."
• A December 16, 2015 email from Rusk to Supervisor Robin Schmidt, discussing the scheduling of the resolution before the Public Works Committee.
• A March 3, 2016 email from Rusk to a constituent, prior to a meeting of the Personnel and Finance Committee on the lease issue, asking the constituent to provide input on the billboards on behalf of the constituent's neighborhood association. The email courtesy copied Supervisor Heidi Wegleitner.
• An April 4, 2016 email from Rusk to Supervisor Dorothy Krause, telling her that he tried calling her and asking if she is "ok voting against the ... billboards." Rusk wrote that he was trying to conduct a "vote count." Krause responded that she would rather not vote because Adams had accused her of bias in a pending litigation, but that if she did vote, she would vote against the billboards.
*457 • Two emails sent to constituents after the April 7, 2016 County Board vote. In one, Rusk tells two constituents that "[w]e lost some votes who told me they were with us." In another, he states: "the Trump Card was the 1998 plan-that saved it. But ... several didn't understand. But it secured my base-they had a strong argument to hang on to."
¶ 4 Based on these emails, Adams alleged that Dane County, the Dane County Board of Supervisors, and the supervisors named in the emails described above, violated the open meetings law. Specifically, Adams alleged an illegal "walking quorum."[1] Adams sought declaratory relief, asking the court to declare the Board's April 7, 2016 decision unlawful. Adams also sought certiorari review of the Board's decision, alleging that "several" supervisors held a personal bias against Adams.
¶ 5 The defendants filed a motion to dismiss Adams's complaint, arguing that Adams failed to state a claim upon which relief could be granted because "there is no temporal or factual nexus whatsoever between any of the email evidence and the Board vote." Rather, "[t]hese communications were no more than the type of ordinary communications necessary to conduct government business." The defendants also argued that Adams put forth no evidence of bias.
¶ 6 The circuit court granted the defendants' motion. Relying primarily on our supreme court's decision in *206 State ex rel. Newspapers, Inc. v. Showers , 135 Wis. 2d 77, 398 N.W.2d 154 (1987), the court stated:
*458 I'm going to grant the motion to dismiss the Open Meetings Law, because I read everything that you've submitted and I don't believe, accepting it all as an accurate and representation of the historical events ... that there's been an open meeting violation. And I come to that conclusion from a number of different ways.
First of all, even if I were to accept Adams' characterization of Supervisor Rusk and Krause, that's two people. Even if I were to accept that they reached out to another eight or nine, including Wegleitner, ... I believe a correct interpretation of Showers and [ WIS. STAT. ] Chapter 19 is there needs to be sufficient numbers.
I've also looked at sufficient numbers needed to be a quorum or a negative quorum. But as [the defendants] say[ ], the numbers are against [Adams] because the county board is so large ... and [Adams has] not presented me with any evidence, that more than the ones you have referenced have been contacted, and I don't think that's a fair inference for me to draw that if he contacted eight or nine or he sent a copy that therefore he must have contacted everyone else.
....
[W]e know, again, that being contacted is not itself a violation of the Open Meetings Law. It is an agreement, tacit or expressed, to act.
....
I think good government requires communication between board members. It wouldn't make sense to me for a county board to act if I said to you ... from now on don't ever talk to each other, don't share information, don't discuss anything until you get to the county board meeting. That certainly would be good advice if you never want to be sued ever again on claims of a walking quorum. It really wouldn't make for good *459 government because good government does require exchange of information and benefitting by the input and information given by your colleagues on a governmental board, much like I'm sure state senators and state assemblymen talk about issues that are coming before. The problem is, is when you work around and through that walking quorum, or even if you got together in a quorum and made a decision, and I don't believe accepting everything as true, looking at the attachments and the allegations, that this complaint states a claim for ... an open meetings [violation].
(Bolding and italics added.) Adams appeals.
DISCUSSION
¶ 7 On appeal, Adams argues that the circuit court erred in finding that it failed to state a claim upon which relief could be granted. Specifically, Adams contends that the complaint: (1) contains allegations sufficient to support an open meetings violations claim; (2) the complaint supports a claim for certiorari review; and (3) the complaint contains a justiciable claim for declaratory relief.
¶ 8 Whether a complaint states a claim upon which relief can be granted is a question of law that we review independently. See Data Key Partners v. Permira Advisers LLC , 2014 WI 86, ¶ 17, 356 Wis. 2d 665, 849 N.W.2d 693. " 'A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint.' " Id. , ¶ 19 (citation omitted). When reviewing a circuit court's decision on a motion to dismiss for failure to state a claim, we accept *207 the facts alleged in the complaint as true and draw all reasonable inferences from those facts in the plaintiff's favor. See id. , ¶¶ 18-19. To withstand a motion to dismiss, a complaint *460 must allege facts that, if true, "plausibly suggest a violation of applicable law." Id. , ¶ 21.
I. Walking Quorum
¶ 9 Here, the circuit court found that Adams's complaint failed to state a claim upon which relief could be granted because Adams failed to show that the named defendants engaged in an illegal walking quorum based both upon the number of supervisors identified in the emails at issue and the actual content of the emails. We agree.
¶ 10 In Showers , the Wisconsin Supreme Court established the two elements necessary to trigger an open meetings law violation claim: (1) "there must be a purpose to engage in governmental business, be it discussion, decision or information gathering[;]" and (2) "the number of members present must be sufficient to determine the parent body's course of action regarding the proposal discussed." Id. , 135 Wis. 2d at 102, 398 N.W.2d 154. The Showers court was clear, however, that the legislature did not intend to interfere with necessary government business by automatically applying the open meetings law to any deliberate government-related meetings between two or more government officials. Id. at 98, 398 N.W.2d 154. Relying in part on Showers , an open meetings law compliance guide, issued by the Wisconsin Attorney General in 2015,[2] clarifies the definition of "walking quorum":
A "walking quorum" is a series of gatherings among separate groups of members of a governmental body, *461 each less than quorum size, who agree, tacitly or explicitly, to act uniformly in sufficient number to reach a quorum.
....
The essential feature of a "walking quorum" is the element of agreement among members of a body to act uniformly in sufficient numbers to reach a quorum. Where there is no such express or tacit agreement, exchanges among separate groups of members may take place without violating the open meetings law. The signing, by members of a body, of a document asking that a subject be placed on the agenda of an upcoming meeting thus does not constitute a "walking quorum" where the signers have not engaged in substantive discussion or agreed on a uniform course of action regarding the proposed subject.
¶ 11 Thus, in order for Adams to establish a walking quorum, its pleadings must plausibly suggest both that the defendants purposefully engaged in discussions regarding the lease renewal vote and that the discussions were held between a sufficient number of board members so as to affect the vote. The complaint does neither.
¶ 12 First, the entire factual basis for Adams's complaint is a series of emails sent by Rusk either to other board supervisors or to constituents. Adams's argument relies primarily on Rusk's emails indicating that he was trying to "keep[ ] track" of the votes and emails to other supervisors in which Rusk expresses discontent with the billboards. Most of Rusk's emails were one-way messages, garnering few, if any, responses from other supervisors. None of the emails reflect a "tacit agreement" between the defendants to vote against the lease. The emails all either dealt with scheduling matters, were *208 communications with constituents, *462 asked other supervisors for their opinions, or expressed Rusk's personal position. Many of the emails at issue were sent in December 2015-four months before the vote even took place. Adams also ignores the fact that prior to the County Board vote, three other public committee meetings took place where supervisors had an opportunity to publically voice their opinions about the billboards. That Rusk was aware of certain votes or was trying to keep track of votes is hardly indicative of a walking quorum.
¶ 13 Second, the complaint fails to establish that a sufficient number of supervisors engaged in discussions capable of affecting the vote. Adams's lease renewal was rejected in an 18-16 vote. Thus, thirty-four supervisors cast votes. According to the complaint, Rusk reached out to eight supervisors, told constituents that he "lost some votes," and stated that he established a "base." As stated, many of Rusk's emails were one-way communications. Rusk did not email or otherwise reach out to a majority of the supervisors (eighteen supervisors). Of the eight supervisors Rusk reached out to, only Krause was directly asked if she was "ok" voting against the lease renewal. Krause responded that she preferred not to vote. Even if Krause did vote against the lease renewal, her one vote is insufficient to even evidence walking quorum.
¶ 14 Adams also makes much of the fact that following the vote, Rusk emailed a constituent that he "lost some votes." However, the email does not say how many votes, which supervisors Rusk anticipated support from, or how Rusk knew which other supervisors were against the lease renewal. Nor does Adams allege with specificity facts which would support a conclusion that Rusk obtained agreement to anything from a majority (eighteen) of the board. Of the thirty-four board members who voted, the complaint alleges that *463 Rusk only had contact with eight of them-less than one-fourth. That number is insufficient for a negative quorum. Simply put, the numbers do not add up and Adams's assertion that the defendants engaged in illegal activity to affect the vote is purely speculative.[3]
II. Adams failed to state a claim for common law certiorari .
¶ 15 Adams contends that the circuit court erroneously found that he failed to state a claim for common law certiorari because the complaint properly alleged that Rusk and Krause should have recused themselves from the April 7, 2016 vote. Adams argues that the supervisors' votes were tainted by impermissible bias. Again, Adams's allegations are speculative. Adams cites no legal authority requiring the supervisors to recuse themselves from the vote. Adams's factual allegations do not support a conclusion that the supervisors were influenced by an impermissible bias. See Data Key Partners , 356 Wis. 2d 665, ¶ 17, 849 N.W.2d 693. Public officials are elected to make decisions. Good government demands that these officials discuss public issues and vote as each sees fit. We decline to address this issue further.
¶ 16 For the foregoing reasons, we affirm the circuit court.
By the Court. -Order affirmed.

A "walking quorum" is defined as "a series of meetings of groups less than a quorum." See State ex rel. Newspapers, Inc. v. Showers , 135 Wis. 2d 77, 92, 398 N.W.2d 154 (1987).

See Wisconsin Dep't. of Justice, Wisconsin Open Meetings Law Compliance Guide (Nov. 2015), https://www.doj.state.wi.us/sites/default/files/dls/2015-OML-Guide.pdf.

Because we conclude that Adams's complaint failed to state a claim upon which relief could be granted, we also conclude that Adams is not entitled to declaratory relief and decline to address this issue further.