# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP225 |

| | |
|---|---|
| COMPLETE TITLE: | Louis Pagoudis, Hanna Pagoudis, Sead Properties, LLC and Kearns Management, LLC,<br>      Plaintiffs-Appellants,<br>   v.<br>Marcus Keidl and Russell K. Berg d/b/a Intervest Inspections,<br>      Defendants,<br>Amy Keidl a/k/a Amy Jo Weyker,<br>      Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d. 75, 963 N.W.2d 803
PDC No:2021 WI App 56 - Published

| | |
|---|---|
| OPINION FILED: | April 4, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 9, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Washington |
|   JUDGE: | Todd K. Martens |

JUSTICES:
KAROFSKY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ANN WALSH BRADLEY, DALLET, and HAGEDORN, JJ., joined. ZIEGLER, C.J., filed a concurring opinion, in which HAGEDORN, J., joined. ROGGENSACK, J., filed an opinion concurring in part and dissenting in part. REBECCA GRASSL BRADLEY, J., filed an opinion concurring in part and dissenting in part.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Laura Elaine O'Gorman* and *Schloemer Law Firm, S.C.,* West Bend. There was an oral argument by *Laura Elaine O'Gorman.*

For the plaintiffs-appellants, there was a brief filed by *Thomas L. Frenn, James R. Shaw,* and *Frenn Law Offices,* Wauwatosa, and *James Shaw Law,* Brookfield. There was an oral argument by *Shawn M. Govern.*

An amicus curiae brief was filed by *Cori Moore Lamont* and *Wisconsin Realtors Association*, Madison, for Wisconsin Realtors Association.

**2023 WI 27**

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2020AP225
(L.C. No. 2019CV492)

STATE OF WISCONSIN        :      IN SUPREME COURT

Louis Pagoudis, Hanna Pagoudis, Sead
Properties, LLC and Kearns Management, LLC,

      Plaintiffs-Appellants,

  v.

Marcus Keidl and Russell K. Berg d/b/a
Intervest Inspections,

      Defendants,

Amy Keidl a/k/a Amy Jo Weyker,

      Defendant-Respondent-Petitioner.

**FILED**

**APR 4, 2023**

Sheila T. Reiff
Clerk of Supreme Court

---

KAROFSKY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ANN WALSH BRADLEY, DALLET, and HAGEDORN, JJ., joined. ZIEGLER, C.J., filed a concurring opinion, in which HAGEDORN, J., joined. ROGGENSACK, J., filed an opinion concurring in part and dissenting in part. REBECCA GRASSL BRADLEY, J., filed an opinion concurring in part and dissenting in part.

---

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part, and cause remanded.*

¶1 JILL J. KAROFSKY, J. This case involves a residential real estate transaction and a claim that the seller

misrepresented the condition of the subject property, which has given rise to confusion because three legally distinct entities——Elias "Louis" Pagoudis, Sead Properties, LLC (Sead LLC), and Kearns Management, LLC (Kearns LLC)——conflated their interests when filing their complaint. This court now endeavors to disentangle those interests and holds that only Sead LLC has sufficiently stated a claim upon which relief can be granted. Pagoudis's and Kearns LLC's claims against Amy Keidl must be dismissed.[1]

## I. BACKGROUND

¶2 We begin by introducing the participants in this real estate dispute. Pagoudis owns and is the sole member of two LLCs: Sead LLC and Kearns LLC.[2] Together, Pagoudis, Sead LLC, and Kearns LLC are the plaintiffs in this action and Amy and Marcus Keidl, the sellers of a piece of residential real estate (the Property), are the defendants.[3]

---

[1] The Honorable Todd K. Martens of the Washington County Circuit Court dismissed the plaintiffs' claims with prejudice. We leave it to the circuit court's discretion on remand whether to dismiss Pagoudis's and Kearns LLC's claims with or without prejudice in light of the analysis herein.

[2] The complaint also lists Hanna Pagoudis, Louis Pagoudis's wife, as a plaintiff with an interest in both LLCs. The complaint treats all of Hanna Pagoudis's claims and rights as derivative of her husband's claims through marriage, so this opinion focuses only on Louis Pagoudis.

[3] The plaintiffs also brought a negligence claim against the home inspector, Russell Berg, but that claim was not part of Amy Keidl's motion to dismiss and is therefore not before this court on appeal.

¶3 We next take a moment to establish which documents we are reviewing. The plaintiffs filed a first amended complaint after Amy Keidl filed a motion to dismiss, but before the circuit court ruled on the motion. With the first amended complaint in play, the circuit court granted Amy Keidl's motion to dismiss in full. The plaintiffs filed a motion for reconsideration while simultaneously filing a second amended complaint.[4] The circuit court subsequently entered the final order granting Amy Keidl's original motion, necessarily denying the motion for reconsideration. The plaintiffs appealed this final order. As such we treat the first amended complaint, the complaint in place when the court initially granted the motion to dismiss, as the operative complaint.

¶4 Various other documents were submitted to this court either in the record attached to motions or in the appendix to appellate briefing. When reviewing a motion to dismiss, we generally limit the review to the four corners of the complaint. See Andruss v. Divine Savior Healthcare Inc., 2022 WI 27, ¶15, 401 Wis. 2d 368, 973 N.W.2d 435. The circuit court considered two warranty deeds attached to Keidl's motion to dismiss under the limited "incorporated-by-reference doctrine." The court of appeals upheld the consideration of the warranty deeds, and the plaintiffs did not appeal that decision. Thus, we also consider

---

[4] Amy Keidl filed another motion to dismiss relating to the plaintiffs' second amended complaint.

3

these two warranty deeds. We do not consider or rely on any other extraneous documents.[5]

¶5 Now we set out the facts of the purchase and transfer of the Property, as alleged in the first amended complaint and established by the warranty deeds. Pagoudis negotiated the terms of the Property's purchase from the Keidls. During the negotiations, he received a real estate condition report (RECR) signed by Amy Keidl. Pagoudis then signed the offer to purchase, which states that the contract is between the Keidls and Pagoudis "or assigns."

¶6 Sead LLC then executed the negotiated contract for the Property and took title to it. Less than six months later, Sead LLC assigned the Property to Kearns LLC. At the time the complaint was filed, Kearns LLC held title to the Property.

¶7 After purchasing the Property, the plaintiffs discovered defects that Amy Keidl failed to disclose in the RECR. The alleged defects range from water and mildew in the basement, to insect infestations, to an unwanted piano.[6] The plaintiffs brought this action against the Keidls for breach of contract, common law misrepresentation, and statutory misrepresentation.

---

[5] We do, however, read some of the complaint's confusing or contradictory language in light of helpful concessions made in the plaintiffs' briefing and oral argument.

[6] We need not go further into the specifics of the alleged defects. At this stage of the proceeding, we accept as true the factual allegation that there were material defects in the Property that were not disclosed in the RECR.

4

¶8 Amy Keidl filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Wis. Stat. § 802.06(2)(a)6 (2019-20)[7]. The circuit court dismissed the case in full, deciding that each of the parties lacked standing to pursue their stated claims. The court reasoned that Pagoudis and Kearns LLC have no standing because they were not parties to the original transaction, and Sead LLC has no standing because it transferred the Property before filing the action and thus no longer has an interest in the Property. The court of appeals reversed, holding that at least one of the parties has standing and remanded to the circuit court for further factual development to determine which party or parties have standing under which claims. We now conclude that Pagoudis's and Kearns LLC's claims against Amy Keidl are dismissed without further factual development because both parties failed to state a claim upon which relief may be granted. Sead LLC's claims, however, survive the motion to dismiss, and as a result we remand the case to the circuit court for further proceedings.

II. STANDARD OF REVIEW

¶9 A motion to dismiss is reviewed de novo taking all well-pleaded factual allegations in the complaint as true and drawing reasonable inferences from those facts. Colectivo Coffee Roasters, Inc. v. Soc'y Ins., 2022 WI 36, ¶7, 401 Wis. 2d

---

[7] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

660, 974 N.W.2d 442. We do not defer to a complaint's legal conclusions. Id. In determining whether this complaint survives a motion to dismiss, we look to various statutes, which we also interpret de novo. State v. Forrett, 2022 WI 37, ¶5, 401 Wis. 2d 678, 974 N.W.2d 422.

### III. ANALYSIS

¶10 While the circuit court, the court of appeals, and the parties view the issue in this case as one of standing, we conclude that the question here is really whether each plaintiff, based on the plaintiff's unique interest in the Property, has sufficiently pled any claim upon which relief can be granted pursuant to Wis. Stat. § 802.06(2)(a)6. This case does not raise a question of judicial policy but of the complaint's legal sufficiency. See McConkey v. Van Hollen, 2010 WI 57, ¶15, 326 Wis. 2d 1, 783 N.W.2d 855 ("standing in Wisconsin is not a matter of jurisdiction, but of sound judicial policy"). Although there are many reasons that a claim may not survive a motion to dismiss, we limit our review to the narrow issue raised and developed on appeal (though stripped of the guise of standing). As such, we interpret the issue as whether each plaintiff, based on their individual interests in the Property, states a claim upon which relief can be granted.

¶11 We determine that, according to the allegations in the complaint, only Sead LLC has properly stated a claim upon which relief can be granted. We begin by laying out the plaintiffs' collective claims. We then summarize some basic principles of LLC law in order to establish that each plaintiff's claims must

6

be analyzed independently. Finally, we address each plaintiff's claims independently and determine that only Sead LLC's claims survive the motion to dismiss.

## A. The Claims

¶12 The plaintiffs' five claims fall into two categories: breach of contract and misrepresentation. The plaintiffs' first cause of action alleges breach of contract (warranty). The elements of any breach of contract claim are (1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages. Brew City Redev. Grp., LLC v. The Ferchill Grp., 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582. To prove the existence of a warranty, the elements are: (1) an affirmation of fact; (2) inducement to the buyer; and (3) reliance by the buyer. See Selzer v. Brunsell Bros., Ltd., 2002 WI App 232, ¶13, 257 Wis. 2d 809, 652 N.W.2d 806. When a warranty is found to be part of a contract, false representations made as part of the warranty are a breach of the contract.

¶13 The plaintiffs' second cause of action is for common law intentional misrepresentation. To establish intentional misrepresentation, the plaintiffs must show: (1) that the defendant made a representation of fact to the plaintiff; (2) the representation was false; (3) the plaintiff believed and relied on the misrepresentation to the plaintiff's detriment; (4) the defendant made the misrepresentation knowingly or recklessly, and (5) the defendant did so intending to deceive

7

and induce the plaintiff. <u>Tietsworth v. Harley Davidson, Inc.</u>, 2004 WI 32, ¶13, 270 Wis. 2d 146, 677 N.W.2d 233.

¶14 The plaintiffs' third cause of action is for common law strict liability misrepresentation. To establish strict liability misrepresentation, the plaintiffs must show: (1) the defendant made a representation of fact to the plaintiff; (2) the representation was false; (3) the plaintiff believed and relied on the misrepresentation to the plaintiff's detriment; (4) the defendant knew or ought to have known that the statement was false; and (5) the defendant had an economic interest in the transaction. <u>Ollerman v. O'Rourke Co. Inc.</u>, 94 Wis. 2d 17, 25, 288 N.W.2d 95 (1980).

¶15 The plaintiffs' fourth cause of action is misrepresentation under Wis. Stat. §§ 943.20(1)(d) and 895.446.[8] The elements of this claim are: (1) that the defendant made a false representation to the plaintiff; (2) the defendant knew the representation was false; (3) the defendant intended to deceive and defraud the plaintiff; (4) the plaintiff was deceived; (5) the plaintiff was defrauded; and (6) the defendant obtained money through the sale of property to the plaintiff. <u>Ferris v. Location 3 Corp.</u>, 2011 WI App 134, ¶8, 337 Wis. 2d 155, 804 N.W.2d 822 (citing Wis. JI-Civil 2419).

---

[8] Wis. Stat. § 943.20(1)(d) makes it a crime to "obtain[] title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made." Section 895.446(1) establishes that anyone "who suffers damage or loss by reason of intentional conduct" prohibited by § 943.20 has a civil cause of action.

¶16 The plaintiffs' fifth and final cause of action is misrepresentation under Wis. Stat. § 100.18, often referred to as "false advertising."[9] The elements of this claim are: (1) the defendant made a representation to the public with intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation caused the plaintiff a pecuniary loss. K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc., 2007 WI 70, ¶19, 301 Wis. 2d 109, 732 N.W.2d 792.

¶17 In their complaint, the plaintiffs allege their claims collectively without distinguishing between Pagoudis, Sead LLC, and Kearns LLC's differing interests and involvement in the transaction. Importantly, however, the plaintiffs' legal interests are not collective as each plaintiff is a separate legal entity according to the principles of LLC law. We explain some of those LLC principles here to make this conclusion clear.

---

[9] The relevant portion of § 100.18(1) reads that "[n]o person . . . with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase . . . of any real estate . . . shall make, publish, disseminate, circulate, or place before the public . . . an advertisement, announcement, statement or representation of any kind to the public relating to such purchase . . . [which] contains any assertion, representation or statement of fact which is untrue, deceptive or misleading." Section 100.18(11)(b) establishes that "any person suffering pecuniary loss because of a violation of this section" has a civil cause of action.

## B. LLCs

¶18 Limited Liability Companies are business entities created by statute——in Wisconsin, by Wis. Stat. ch. 183.[10] Although an LLC is an association of members, Chapter 183 treats LLCs as distinct legal entities separate from their members. Joseph W. Boucher et al., LLCs and LLPs: A Wisconsin Handbook § 4.4. This legal distinction between the interests of LLCs and their members is evident in how the chapter governs LLC and member property interests (subchapter VII) and the relationships between LLCs and their members (subchapter III).

¶19 First, chapter 183 clearly distinguishes the property interests of LLC members from the property interests of the LLC. See Wis. Stat. § 183.0701(1) ("All property originally transferred to or subsequently acquired by or on account of a limited liability company is property of the limited liability company and not of the members individually."); Wis. Stat. § 183.0701(3) ("Any interest in real property may be acquired in the name of a limited liability company and title to any interest so acquired shall vest in the limited liability company rather than in the members individually."). LLC members have a personal property interest in the LLC itself, but do not have an

---

[10] We note that since the appeal of this action, Wis. Stat. ch. 183 has been completely repealed and recreated in 2021 WI Act 258. Wisconsin Stat. § 183.0110(d)(1)(2021-22) states that the 2019 version of chapter 183 shall remain applicable "with respect to obligations incurred by the limited liability company prior to" the date of applicability of the new chapter, January 1, 2023. As the obligations in this case were incurred prior to January 1, 2023, the 2019 version of chapter 183 applies.

interest in any specific property owned by the LLC. Wis. Stat. § 183.0703; Wis. Stat. § 183.0701(1). This is true even if a member contributed that specific property to the LLC. Wis. Stat. § 183.0701(1).

¶20 Second, Chapter 183 defines the relationship between an LLC and its members such that a member may act as an agent of the LLC, but a member does not share the LLC's liabilities solely by virtue of membership. Section 183.0301(1) provides that each member of a member-managed LLC[11] is an agent of the LLC and the acts of members made in the ordinary course of LLC business bind the LLC. Additionally, the "debts, obligations, and liabilities" of an LLC "shall be solely the debts, obligations and liabilities of the [LLC]," and an LLC's member "is not personally liable for any debt, obligation or liability" of the LLC (subject to a few exceptions that are inapplicable in this case). Wis. Stat. § 183.0304(1). This is the "limited liability" referenced in the LLC designation.

¶21 Taken together, these statutes establish that LLCs are individual entities that are legally separate from their members and from other LLCs, regardless of common ownership. Neither

---

[11] LLCs may be either member-managed or manager-managed and different statutory rules apply to each designation. The default rule is that LLCs are member-managed. Wis. Stat. § 183.0401(1). Since Pagoudis has not alleged otherwise, and because he has at times claimed to be acting on behalf of Sead LLC, we assume that the default rule applies and Sead LLC is a member-managed LLC.

assets nor liability flow freely between the LLC and its members simply by virtue of LLC membership.

¶22 Based on these principles, and absent any allegations that would otherwise tie their interests together, we must treat Pagoudis as distinct under the law from his LLCs. We also must treat Sead LLC's interests as distinct from Kearns LLC's interests. Pagoudis may have taken some actions on behalf of his LLCs as an agent, but that does not mean he can combine his interests as an individual with his interests as an agent of an LLC. We now turn to the claims at issue with these distinctions in mind.

### C. The Plaintiffs

¶23 We first explain that, under the allegations in the complaint, each of Pagoudis's claims must be dismissed because he was not a party to the final contract and did not purchase the Property. Then we demonstrate that Sead LLC survives the motion to dismiss because, as alleged, it was a party to the contract, received representations from the Keidls, and purchased the Property. Finally, we establish that Kearns LLC's claims must be dismissed because, as alleged, Kearns was not a party to the contract and the Keidls made no representations to Kearns LLC.

### 1. Pagoudis

¶24 Although the complaint alleges that Pagoudis negotiated and signed the offer to purchase, it does not allege that he took title to the Property, and we know from the warranty deed and concessions at oral argument that Sead LLC

12

purchased and took title from the Keidls. The complaint does not specify how this transpired, but it could have happened in one of two ways, neither of which would allow Pagoudis to establish a claim in his individual capacity. Either: (1) Pagoudis negotiated and signed the offer to purchase as an agent of Sead LLC; or (2) Pagoudis assigned his rights as an individual in the contract to Sead LLC before the purchase was completed.

¶25 Under the first scenario, if Pagoudis acted as Sead LLC's agent, then his actions were on behalf of Sead LLC alone and he was never a party to the transaction in his individual capacity.[12]

¶26 Under the second scenario, if Pagoudis were acting in his individual capacity when he negotiated the contract, then he necessarily must have assigned his relevant contract rights to Sead LLC before the contract was executed because Sead LLC purchased and took title to the Property. If Pagoudis assigned his rights in this way, then Pagoudis's rights as an individual were extinguished. When one assigns particular rights in a contract to another party, their own claims under those assigned rights are generally extinguished. Tullgren v. Sch. Dist. No. 1 of Vill. of Whitefish Bay, 16 Wis. 2d 135, 142, 113 N.W.2d 540 (1962) (quoting 6 C.J.S. Assignments § 82). Otherwise, any

---

[12] The plaintiffs presented this scenario during oral arguments, claiming that Pagoudis was acting as an agent of Sead LLC when signing the offer to purchase and that no assignment was made.

13

assignment of contract rights would expand and duplicate liability. Thus, whether Pagoudis acted as an agent or assigned his contract rights to Sead LLC, Pagoudis did not purchase the Property.

¶27 As such, under either scenario, Pagoudis failed to state a claim for breach of contract. Pagoudis cannot satisfy the first element of a breach of contract claim——the existence of a contract between the Keidls and Pagoudis.

¶28 Also, Pagoudis cannot satisfy the third element of a breach of contract claim or any of his misrepresentation claims because he did not purchase the property——the complaint's only alleged source of damages. As to his common law intentional and strict liability misrepresentation claims, Pagoudis cannot show that he believed and relied upon the misrepresentation to his own detriment, and thus he cannot satisfy the third element of either claim. Even if Pagoudis alleged reliance, it was to Sead LLC's detriment, not Pagoudis's. Pagoudis's statutory misrepresentation claim must likewise fail under its sixth element——that the defendant obtained money through the sale of property to the plaintiff——because the Keidls sold the property to Sead LLC and not to Pagoudis. Finally, Pagoudis's statutory false advertising claim fails under its third element——that the representation caused the plaintiff a pecuniary loss. Again, the only source of damages or pecuniary loss alleged in the complaint stems from the purchase of the property, and Pagoudis did not purchase the property.

14

¶29 Pagoudis argues that because he used personal funds in the purchase of the Property, he was in fact the purchaser under the contract despite not taking title to the Property. This argument is rebutted by Wis. Stat. § 183.0701 which establishes that the property acquired by an LLC, including title to real property, belongs solely to the LLC and not to the LLC's members. The source of the funds is immaterial. In sum, Pagoudis has not stated any claim for breach of contract or any form of misrepresentation and thus his claims must be dismissed.

## 2. Sead LLC

¶30 In contrast, Sead LLC's allegations satisfy the elements of its breach of contract claim and its misrepresentation claims. Sead LLC satisfies the elements of its breach of contract claim by alleging: (1) the Keidls entered into a contract with Sead LLC which included a warranty or representation related to the RECR;[13] (2) the Keidls breached that contract because those affirmations were false; and (3) Sead LLC suffered damages as a result.

---

[13] The complaint alleges that as part of the contract for the purchase of the Property, the Keidls "warranted and represented that they had no notice or knowledge of conditions affecting the Property other than those identified in the [RECR]." Although the required language of an RECR as set out in Wis. Stat. § 709.03 clearly states that it "is not a warranty of any kind," the complaint alleges plausibly that the Keidls separately offered a warranty as part of the purchase contract, which document is not before this court. Furthermore, Amy Keidl did not develop any argument that the plaintiffs failed to sufficiently allege the existence of a warranty. As such, we do not decide whether the disclaimer of a warranty in § 709.03 could eventually defeat Sead LLC's breach of contract (warranty) claim.

15

¶31 Sead LLC's allegations satisfy all of the elements of the four misrepresentation claims. Under the intentional misrepresentation claim, Sead LLC has alleged: (1) that Amy Keidl made a representation of fact to Sead LLC (either through its agent, Pagoudis, or through the assigned contract rights) that the Keidls did not know of any material property defects beyond those disclosed; (2) that such representation was false because the Keidls knew of additional material defects; (3) that Sead LLC believed and relied on the representations in the RECR; (4) that the Keidls knowingly made the false representation; and (5) that the Keidls did so intending to deceive and induce Sead LLC into purchasing the Property. For the purposes of the complaint, the strict liability misrepresentation claim's first four elements are the same as the intentional misrepresentation claim. In addition to properly alleging those elements, the complaint sufficiently alleges that the Keidls had an economic interest in the sale of the Property.

¶32 Under the statutory misrepresentation claim, the complaint sufficiently alleges that: (1) the Keidls made a false representation to Sead LLC that all known material defects were reported in the RECR; (2) the Keidls knew the representation was false; (3) the Keidls intended to deceive and defraud Sead LLC; (4) Sead LLC was deceived; (5) Sead LLC was defrauded; and (6) the Keidls obtained money through the sale of property to Sead LLC.

¶33 Finally, under the false advertising claim, the complaint sufficiently alleges that: (1) the Keidls made a

16

representation to "the public" by making representations in the RECR to a potential buyer, Sead LLC; (2) the representations were untrue; and (3) the representation caused Sead LLC a pecuniary loss because it purchased property with more material defects than disclosed that will cost money to repair.

¶34 The circuit court in this case erroneously dismissed Sead LLC as lacking standing because Sead LLC no longer held title to the Property. Current or continuing possession of property is not an element of any of the alleged claims and is not a requirement under general standing principles. The question is whether Sead LLC suffered damages before transferring the Property. Sead LLC has alleged that it suffered damages because it paid more for the Property than the Property was actually worth. It incurred these alleged damages at the point of sale, prior to transferring the Property. Furthermore, Sead LLC alleges plausibly that it incurred costs in preparing to repair the Property prior to transferring the property to Kearns LLC.

¶35 In light of the LLC principles set out above, it is important to note that Sead LLC's damages are limited to only the damages Sead LLC itself suffered. The court of appeals discussed, without deciding, that Kearns LLC and Sead LLC's damages might flow between them as a "related party." See Pagoudis v. Keidl, 2021 WI App 56, ¶33, 399 Wis. 2d 75, 963 N.W.2d 803. However, LLCs do not become "related" parties merely due to common membership or ownership. LLCs are individual entities whose benefits and protections stem from

17

their legally separate nature. These lines of separation cannot be crossed at the whim of the LLC's members only when beneficial to them. Sead LLC is its own entity, separate from Kearns LLC and separate from its member, Pagoudis. Sead LLC must establish its own damages.

### 3. Kearns LLC

¶36 Finally, we turn to Kearns LLC, the current owner of the Property. Kearns LLC's breach of contract (warranty) claim must be dismissed. It was not a party to the contract with the Keidls. The complaint does not allege that Kearns LLC signed the offer to purchase the Property or that Kearns LLC was assigned any rights under that offer to purchase, nor does it allege any other facts that would put Kearns LLC in privity of contract with the Keidls.[14] As such, it cannot satisfy the first element of a breach of contract claim: that a contract existed between the Keidls and Kearns LLC.

¶37 Similarly, Kearns LLC's misrepresentation claims must be dismissed because the complaint does not allege that the Keidls made any representations to Kearns LLC. Therefore, Kearns LLC does not meet the first element of its first three misrepresentation claims——that the defendant made a representation of fact to the plaintiff. Furthermore, the complaint does not allege that the Keidls made a representation

---

[14] Privity of contract is defined as the "relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so." Privity, Black's Law Dictionary 1453 (11th ed. 2019).

18

of fact to Kearns LLC as a member of "the public" under the first element of a false advertising claim.[15]

¶38 Stated another way, under the facts alleged in the complaint, Sead LLC——not the Keidls——is the only party that could have made representations regarding the current status of the Property to Kearns LLC before Kearns LLC took title to the property. Therefore, any claim for misrepresentation Kearns LLC may hold would have to be brought against Sead LLC.

¶39 The plaintiffs argue that Kearns LLC can nevertheless satisfy the elements of their misrepresentation claims under a theory of third-person misrepresentation as set out in the Restatement (Second) of Torts § 533. The Restatement (Second) of Torts § 533 states:

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

This section cannot apply under the facts of this case because the Keidls did not have a reason to expect that their

---

[15] Although representations to a potential real estate purchaser have been considered representations to "the public" in Below v. Norton, under these facts, only the purchaser received those representations from the Keidls. See Below v. Norton, 2008 WI 77, ¶¶5-6, 310 Wis. 2d 713, 751 N.W.2d 351.

representations in the RECR would be repeated and relied upon by Kearns LLC.[16]

¶40 A decision that the Keidls had reason to expect the representations in the RECR would reach and be relied on by a subsequent buyer would run contrary to Wisconsin's RECR statutes. Wisconsin Stat. § 709.02(1) requires that sellers of residential real estate furnish a completed RECR under Wis. Stat. § 709.03 to "the prospective buyer." The statutorily provided form states that "[t]he owner discloses the following information with the knowledge that, even though this is not a warranty, prospective buyers may rely on this information in deciding whether and on what terms to purchase the property." Wis. Stat. § 709.03 A6. These statutes clearly set out the reasonable expectation regarding who may rely on an RECR.

¶41 Only a "prospective buyer" may be expected to rely on the RECR. Sections 709.02 and 709.03 are closely related statutes with direct cross references between them and thus a plain reading of the statutes assigns a consistent meaning to the term "prospective buyer" in both sections. See United Am., LLC v. Wis. Dep't of Transp., 2021 WI 44, ¶6, 397 Wis. 2d 42, 959 N.W.2d 317 ("Common meaning is derived in part from the statutory context in which the terms are used. That includes the terms' usage in relation to the language of closely related statutes[.]" (internal citations omitted)). In Wis. Stat.

---

[16] We do not decide whether Restatement § 533 may be adopted by a future court under different factual allegations.

§ 709.02(1), "prospective buyer" refers specifically to a buyer already in contract with the seller. Wis. Stat. § 709.02(1) ("[T]he owner of the property shall furnish, not later than 10 days after acceptance of a contract of sale or option contract, to the prospective buyer of the property a completed copy of the report under s. 709.03 . . . ."). Thus, although the term "prospective" could indicate simply any "future" buyer,[17] the term "prospective buyer" in the context of the statute must be limited to a future buyer within the specific transaction at issue. To extend liability to <u>any</u> future buyer in a different transaction with a different seller would be contrary to the plain language of the statute and would create endless potential liability for home sellers. It is evident that the statutes establish that a seller must reasonably expect reliance by only the prospective buyer in the current transaction.

¶42 As there can be no reasonable expectation of third-party reliance stemming from an RECR, and the Keidls made no direct representations to Kearns LLC, Kearns LLC cannot maintain any of its misrepresentation claims. In sum, all claims by Kearns LLC must be dismissed.

## IV. CONCLUSION

¶43 Sead LLC's claims survive this Wis. Stat. § 802.06(2)(a)6. motion to dismiss, which we interpret as challenging the sufficiency of the complaint based on the

---

[17] Prospective is defined as "effective or operative in the future." Prospective, <u>Black's Law Dictionary</u> 1477 (11th ed. 2019).

identity of the plaintiff. Amy Keidl's motion to dismiss must be granted as to Pagoudis and Kearns LLC as they have not stated any claim upon which relief can be granted.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶44 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I agree that both Pagoudis and Kearns must be dismissed, and I reiterate both that I would not adopt the Restatement (Second) of Torts § 533 and that an LLC is indeed a separate and distinct entity from its members. Furthermore, based upon the Amended Complaint, concessions at oral argument by Pagoudis's counsel, and warranty deeds undisputedly incorporated into the Amended Complaint, dismissal of Pagoudis is appropriate. I write separately to emphasize the limited scope of our review at the motion to dismiss stage with regard to Pagoudis's claims brought in his personal capacity and the unique facts of this case that bear upon that question.

¶45 "When we review a motion to dismiss, factual allegations in the complaint are accepted as true for purposes of our review." Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶18, 356 Wis. 2d 665, 849 N.W.2d 693. We "derive all reasonable inferences from those facts" and "construe those facts and inferences in the light most favorable to the plaintiff." Preston v. Meriter Hosp., Inc., 2005 WI 122, ¶13, 284 Wis. 2d 264, 700 N.W.2d 158. Though "a court cannot add facts in the process of construing a complaint," Data Key Partners, 356 Wis. 2d 665, ¶19, a court may, in limited circumstances, consider facts outside the four corners of the complaint under the "incorporation-by-reference" doctrine. "The incorporation-by-reference doctrine 'prevents a plaintiff from "evad[ing] dismissal . . . simply by failing to attach to his complaint a document that prove[s] his claim has no merit."'"

1

Soderlund v. Zibolski, 2016 WI App 6, ¶38, 366 Wis. 2d 579, 874 N.W.2d 561 (quoting Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012)) (alterations in original).

¶46 The plaintiffs' Amended Complaint alleges, "SEAD PROPERTIES, LLC . . . purchased the Property from the DEFENDANTS."[1] The Amended Complaint also alleges the "[P]roperty was purchased with mar[it]al funds" and that "Pagoudis entered into a contract with [the Keidls] for the purchase of the Property, which was intended to be their permanent residence with their children." As the court of appeals put it, these pleadings are "hardly a model of clarity." Pagoudis v. Keidl, 2021 WI App 56, ¶36, 399 Wis. 2d 75, 963 N.W.2d 803. Without more, one might read the Amended Complaint as not clearly establishing whether it was Pagoudis, in his personal capacity, or Sead that received representations about the property causing the purchase.

¶47 Ordinarily, in a motion to dismiss, we would construe the pleading in a light most favorable to the nonmoving party without resort to any extrinsic sources. One might be able to conclude that Pagoudis cannot yet be dismissed because the pleadings sufficiently allege that Pagoudis individually was the initial purchaser to whom misrepresentations were made and that those misrepresentations caused him to decide to purchase property and assign it before closing. However, that interpretation was directly repudiated by his counsel at oral

---

[1] The plaintiffs also filed a second amended complaint. We review only the first amended complaint because the plaintiffs appealed from the order dismissing that complaint.

argument. Perhaps this is because Sead is reflected as the owner on the warranty deed.

¶48 Typically we would not consider anything other than the complaint in our analysis. However, Keidl actually attached two warranty deeds to the motion to dismiss. The circuit court considered both of these documents. The court of appeals upheld that consideration as proper under the incorporation-by-reference doctrine, and neither party appealed this determination or argues that this was improper. The first document was the deed from the initial purchase transfer from the Keidls to Sead, and the second was the deed transferring the Property from Sead to Kearns. Relevant to our determination, however, is the first warranty deed, as it concerns the initial purchase of the Property. The deed from the initial transfer states, "This Deed[ is] made between Marcus J. Keidl and Amy J. Keidl . . . and Sead Properties LLC." It conveyed the Property directly from the Keidls to Sead, "[t]ogether with all and singular the hereditaments and appurtenances thereunto belonging."

¶49 Pagoudis's counsel conceded at oral argument that Pagoudis was not acting as an individual but instead acted only as an agent for his LLC in the transaction and that any misrepresentations were made to those LLCs through Pagoudis.[2]

_____

[2] We may accept such concessions for purposes of resolving a motion to dismiss. See Wis. Mfrs. & Com. v. Evers, 2022 WI 38, ¶17 n.10, __ Wis. 2d __, 977 N.W.2d 374 (accepting a concession at the motion to dismiss stage); DeBruin v. St. Patrick Congregation, 2012 WI 94, ¶4 n.5, 343 Wis. 2d 83, 816 N.W.2d 878 (same); Penterman v. Wis. Elec. Power Co., 211 Wis. 2d 458, 480-81, 565 N.W.2d 521 (1997) (same).

Responding to questions about whether the complaint states a claim for Pagoudis individually or Pagoudis as a member of Sead, counsel stated,

> The fact of the matter is Louis Pagoudis was on the contract. Louis Pagoudis is the managing sole member of both of the LLCs. He's an agent by definition under [§] 183 because the LLC acts through its members and its managing members are authorized. And so, at the end of the day, I believe these LLCs are the recipients of the misrepresentation.[3]

¶50 Counsel was next questioned about how Pagoudis "personally could suffer damages simply because [he is a] member of an organization that purchased a property." Counsel responded, "[T]here are losses that are related to diminution of value . . . . The sole members, their value in the LLC is tied to the profits and losses in the values of the assets." Counsel admitted that the only damage Pagoudis suffered was through his interest in the LLC. There is no allegation that Pagoudis personally suffered damages unrelated to his LLC interest.[4]

---

[3] Counsel also later conceded that Pagoudis "took title through an LLC."

[4] Although LLC members may be monetarily affected by the successes and failures of the distinct legal entity, the LLC, the treatment of the LLC remains the same regardless of the composition of its members. To say otherwise would blur the line between an LLC and its members. The protections afforded do not fluctuate depending on advantages given a particular situation. Cf. Notz v. Everett Smith Grp., Ltd., 2009 WI 30, ¶20, 316 Wis. 2d 640, 764 N.W.2d 904 (footnote omitted) (citation omitted) ("[A] right of action that belongs to the corporation cannot be pursued as a direct claim by an individual stockholder. . . . [E]ven where the injury to the corporation results in harm to a shareholder, it won't transform an action from a derivative to a direct one . . . ."); 54 C.J.S. Limited Liability Companies § 64 (2023) ("The principles of derivative lawsuits applicable to corporations likewise apply to limited liability companies.").

4

Counsel's admissions demonstrate that Pagoudis only ever acted through his LLC, never in his personal capacity.

¶51 Based on counsel's admissions at oral argument and the warranty deed, Sead was the initial purchaser and took title directly from the Keidls. Pagoudis, in his personal capacity, never individually purchased or owned the Property and therefore had no claims to assign. For these reasons, the claims brought in Pagoudis's personal capacity are properly dismissed.

¶52 For the foregoing reasons, I respectfully concur.

¶53 I am authorized to state that Justice BRIAN HAGEDORN joins this concurrence.

5

¶54 PATIENCE DRAKE ROGGENSACK, J. *(concurring in part, dissenting in part).* Louis Pagoudis, Sead, LLC (Sead) and Kearns Management, LLC (Kearns) assert claims against Marcus and Amy Keidl (the Keidls) based on their sale of "the Property." The majority improperly dismisses Pagoudis's and Kearns's claims based on its conclusion that in regard to those two plaintiffs, the Amended Complaint fails to state a claim upon which relief can be granted.[1]

¶55 Because the Amended Complaint alleges facts that, if proved true, state tort claims for intentional misrepresentation, strict liability for misrepresentation, violations of Wis. Stat. §§ 895.446 and 943.20 and false advertising pursuant to Wis. Stat. § 100.18, by the Keidls, Pagoudis and Kearns should be permitted to proceed further in developing facts relevant to those tort claims.[2]

¶56 Furthermore, as I explain below, such claims generally are assignable. However, the Amended Complaint does not allege that they were assigned to either Sead or Kearns and therefore, they likely remain with Pagoudis. And finally, if Sead or Kearns are worth less than the dollar amount that Pagoudis placed into them due to actions of the Keidls, the value of his personal property interests in those entities may have been injured. We simply can't determine where the ultimate injury

---

[1] Majority op., ¶8.

[2] Essentially, Pagoudis's claim is for fraud in the inducement based on those alleged torts.

1

may lie based solely on the Amended Complaint. Accordingly, because the possibilities in regard to injury and valuation are myriad, I would affirm the court of appeals, and I respectfully dissent from the majority opinion's dismissal of claims made by Pagoudis and Kearns.

## I.  BACKGROUND

¶57  The Amended Complaint alleges that Pagoudis contracted with the Keidls to purchase the Property.[3]  Although Pagoudis, Sead and Kearns are listed as "Plaintiffs" in the Amended Complaint, with few exceptions, the paragraphs of the Amended Complaint refer to "plaintiff" in the singular form, allege facts occurring before the closing on the sale of the Property when Pagoudis was the only actor and allege financial outlays that Pagoudis made subsequent to closing.  In sum, the allegations in the Amended Complaint are written as though from Pagoudis's perspective.[4]

¶58  In making his decision to purchase, Pagoudis relied on the "Real Estate Condition Report" (RECR) that was prepared by Amy Keidl and dated February 1, 2017.[5]  The RECR shows that Pagoudis acknowledged its receipt on March 11 or 17, 2017.[6]  Although the accepted offer to purchase is not part of the record before us, the parties seem to agree that Pagoudis signed

---

[3] Amended Complaint, ¶5.

[4] E.g., id., ¶¶5, 6, 8, 10-12, 18, 31-36, 40.

[5] Id., ¶1, referencing the attached RECR, ¶6.

[6] Id., RECR attached to the Amended Complaint has an unclear date of receipt by Pagoudis.

2

it with some indication on the document that he could assign the interest he was obtaining.[7]

¶59 Prior to closing, the Keidls represented that they had no knowledge of defects, including, but not limited to basement water leaks or mold or fungus being present in the Property.[8] Pagoudis found those and other defects subsequent to closing, and he contacted experts who informed him that those defects existed while the Keidls owned the property.[9] Therefore, Pagoudis contends that the Keidls knew of the defects.[10]

¶60 Pagoudis asserts that the Keidls failed to disclose material facts with the intent to deceive and to induce him to act in reliance on their deception.[11] He asserts the Keidls made representations about the condition of the Property that were untrue, with the intent to sell the Property.[12] Because of the Keidls' failure to disclose defects in the Property, Plaintiffs suffered economic damage.[13]

¶61 Sead Properties, LLC is a Wisconsin limited liability company.[14] As Pagoudis's likely assign, Sead took title to the

---

[7] The accepted offer to purchase was not submitted at the circuit court. It was improperly attached to Plaintiffs' appendix at the court of appeals.

[8] Amended Complaint, ¶9.

[9] Id., ¶11.

[10] Id., ¶13.

[11] Id., ¶22.

[12] Id., ¶38.

[13] Id., ¶29.

[14] Id., ¶2.

Property from the Keidls.[15]  Pagoudis is the sole member of
Sead.[16]  Kearns is a Wisconsin limited liability company that is
solely owned by Pagoudis.[17]  Sead assigned its interest in the
Property to Kearns.[18]  The Amended Complaint says nothing about
Pagoudis assigning his tort claims to Sead or Kearns.

¶62  The circuit court dismissed the Amended Complaint as
to all parties.  It concluded that the Amended Complaint did not
state a claim for Pagoudis, Sead, or Kearns.  The court of
appeals reversed and reinstated the Amended Complaint in regard
to Pagoudis, Sead, and Kearns.[19]  It concluded that the Amended
Complaint could not be dismissed without further factual
development.[20]

---

[15] Id., ¶2.  It is agreed that Sead took title to the
Property, even though that fact is not alleged in the Amended
Complaint.

[16] Id., ¶2.

[17] Id., ¶3.

[18] Id., ¶3.

[19] Pagoudis v. Keidl, 2021 WI App. 56, ¶2, 399 Wis. 2d 75,
963 N.W.2d 803.

[20] Id.

4

## II. DISCUSSION

### A. Standard of Review

¶63 Upon review of this motion to dismiss, we begin by accepting all well-pleaded facts and their reasonable inferences in the Amended Complaint. Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. "[L]egal conclusions asserted in a complaint are not accepted, and legal conclusions are insufficient to withstand a motion to dismiss." Id., ¶18. Furthermore, "a court cannot add facts in the process of construing a complaint." Id., ¶19. Whether the alleged facts state a claim for relief is a question of law that is subject to our independent review. Id., ¶17.

¶64 The pending dispute requires us to interpret and apply statutes, which also present questions of law that we independently decide. Townsend v. ChartSwap, LLC, 2021 WI 86, ¶11, 399 Wis. 2d 599, 967 N.W.2d 21.

### B. Claim Ownership

¶65 In order to answer the questions presented by the motion to dismiss, it is helpful to understand the relationships between Pagoudis and the two limited liability companies, Sead and Kearns. See Marx v. Morris, 2019 WI 34, 386 Wis. 2d 122, 925 N.W.2d 112.

### 1. General LLC Principles

¶66 Wisconsin limited liability companies are entities that were created by Wis. Stat. ch. 183.[21] They commonly are

---

[21] Wisconsin Stat. ch. 183 recently was repealed and recreated, with revisions effective January 1, 2023 unless the obligation at issue occurred prior to that date. Wis. Stat.

5

used in Wisconsin because of their flexibility and the personal liability shield they provide for members who conduct business by the use of an LLC.

¶67 LLCs are formed by filing articles of organization with the Department of Financial Institutions to give notice of their existence. Wis. Stat. § 183.0201; Joseph W. Boucher et al, LLCs and LLPs: A Wisconsin Handbook, § 1.6 (6th ed. 2018). Generally, members create a contract, the operating agreement, which sets out an LLC's mode of operation. Id., §§ 1.6, 3.60.

¶68 Due to the desire for flexibility of operation, many provisions in Wis. Stat. ch. 183 furnish default rather than mandatory rules for an LLC. "However, all the default rules apply unless an operating agreement unambiguously states otherwise." Marx, 386 Wis. 2d 122, ¶27.

¶69 Members make contributions to the capital of the LLC in exchange for their ownership interest in it. LLCs and LLPs: A Wisconsin Handbook, supra, at § 4.8. Contributions traditionally consist of property or cash or services, and the operating agreement states the value of each member's contribution. Wis. Stat. § 183.0501.

¶70 A member's ownership interest in an LLC is personal property. Wis. Stat. § 183.0703. Therefore, even if a member obtains his or her interest in the LLC by contributing real estate to the LLC, once contributed, that individual's interest in the real estate ends. Wis. Stat. § 183.0701(1); LLCs and LLPs: A Wisconsin Handbook, supra, at § 4.4. In exchange, the

§ 183.0110(d)(1) (2021-22).

6

member obtains a personal property interest in the LLC. § 183.0703; LLCs and LLPs: A Wisconsin Handbook, supra, § 4.4.

### 2. Pagoudis, Sead, and Kearns

¶71 The operating agreement for neither Sead nor Kearns is in the record. Therefore, at this point in the litigation, we proceed based solely on the factual allegations contained in the Amended Complaint, which we accept as true for purposes of Amy Keidl's motion to dismiss. Data Key Partners, 356 Wis. 2d 665, ¶19.

¶72 The assignment of the contractual right to take title to the Property, which apparently was executed in favor of Sead, also is not in the record.[22] Therefore, we cannot tell whether Pagoudis assigned simply the right to take title to the Property or also assigned his tort claims. However, the Amended Complaint does not allege tort claim assignment.

¶73 We addressed a similar concern in Chimekas v. Marvin, 25 Wis. 2d 630, 131 N.W.2d 297 (1964), which was relied on in part by the court of appeals.[23] There, Chimekas contracted with

---

[22] The parties seem to agree that Pagoudis contracted to purchase the property for himself "or assigns." However, the accepted offer to purchase was not submitted while this matter was before the circuit court and no document actually making an assignment from Pagoudis to Sead is in the record. However, paragraph 2 of the Amended Complaint says, Sead "purchased the property from the DEFENDANTS." This may be a conclusion of law to which we owe no deference if Pagoudis paid for the property to which Sead took title. See Davis v. Buchanan Cnty., Mo., 5 F.4th 907, 911 (8th Cir. 2021). At this point in the litigation, we simply don't have complete factual development.

[23] Pagoudis, 399 Wis. 2d 75, ¶36.

7

Marvin to purchase residential property. As "an inducement for the Chimekas entering into the contract the defendants knowingly falsely represented and warranted that the basement was dry and waterproof; in fact it was not dry or waterproof." Id. at 631. Chimekas assigned all of their contractual rights to Chaloupkas by gift and both sued Marvin for damages for fraud. Id.

¶74 The trial court dismissed the action, concluding that once Chimekas transferred their interest to Chaloupkas they had no damages, and Chaloupkas had no damages because a cause of action for fraud is not assignable. Id. at 631-32. We explained, as we reversed the trial court, that Chimekas' assignment to Chaloupkas of the contractual right to purchase the property "is not an allegation that the former assigned their tort cause of action for fraud to the latter." Id. at 632. In concluding that Chaloupkas was not an assignee of the fraud claim, we further explained that the "accepted test of assignability of a cause of action is whether it survives the death of a party." Id. at 632-33 (citing P.C. Monday Tea Co. v. Milwaukee Cnty. Expressway Comm'n, 24 Wis. 2d 107, 111, 128 N.W.2d 631 (1964) (further citations omitted)). Furthermore, "a cause of action for deceit in inducing a conveyance of real estate survives the defrauded party's death. Such a cause of action, therefore, is assignable." Chimekas, 25 Wis. 2d at 633. However, Chimekas making a gift of their right to own the property does not affect the issue of whether Chimekas sustained

---

The majority opinion never mentions Chimekas v. Marvin, 25 Wis. 2d 630, 131 N.W.2d 297 (1964), even though the court of appeals and I have used it in our opinions.

damages because of defendants' alleged false representations. Id. Therefore, we concluded that the complaint stated facts that were sufficient to constitute a tort cause of action in fraud for Chimekas. Id.

¶75 Here, as in Chimekas, Pagoudis's tort claims against the Keidls could have been assigned to Sead because they generally are assignable claims. Id. at 633. However, there is no allegation in the Amended Complaint that Pagoudis did assign them. Therefore, at this point in the litigation, Pagoudis may well hold those claims.

¶76 The majority analysis is confused because it does not recognize that Pagoudis's claims are tort claims against the Keidls. Although breach of contract is alleged, cut to the quick, the Amended Complaint alleges fraud in the inducement to purchase real estate. The majority opinion also does not recognize that the Amended Complaint controls our analysis.

¶77 Pagoudis did not allege in the Amended Complaint that he assigned his tort claims to anyone. The majority opinion says that if Pagoudis negotiated the purchase of the Property as an individual and assigned his contract rights to Sead, "Pagoudis's rights as an individual were extinguished."[24] The majority goes on to opine that "When one assigns particular rights in a contract to another party, their own claims under those assigned rights are generally extinguished."[25] It cites

---

[24] Majority op., ¶26.

[25] Id.

9

Tullgren v. Sch. Dist. No. 1 of Vill. of Whitefish Bay, 16 Wis. 2d 135, 142, 113 N.W.2d 540 (1962), for that assertion.

¶78 Tullgren says it is based on an "unqualified" assignment of contract rights. Id. at 141-42. Here, an "assignment" from Pagoudis is not in the record so we do not know if there is a document that sets the terms of the assignment. Perhaps it was unqualified; perhaps not. The record is silent.

¶79 Also, Tullgren is based on a contract claim. And, although the Plaintiffs made a breach of contract claim, the central dispute in regard to Pagoudis is based on fraud in the inducement, which is a tort claim. Tullgren provides no support for the conclusion that Pagoudis's tort claims are extinguished.[26]

¶80 Chimekas is on all fours with the dispute before us. It is grounded in the principle that transferring ownership in a property does not transfer tort claims unless the owner of the tort claim so alleges. Chimekas, 25 Wis. 2d at 633. In the dispute before us, the Amended Complaint does not allege that Pagoudis assigned his tort claims against the Keidls.

¶81 Kearns now has title to the property.[27] However, there is nothing in the Amended Complaint that alleges that Pagoudis assigned his tort claims to Sead, who then assigned them to

---

[26] Without the assignment from Pagoudis to Sead, it is also not possible to determine whether it was "unqualified" in regard to contract rights.

[27] Amended Complaint, ¶3.

Kearns when Sead assigned its ownership rights in the Property. It simply alleges Kearns is a Wisconsin LLC to which Sead assigned the Property.[28]

¶82 Under Wisconsin law, LLCs operate under the entity theory such that each LLC is an individual entity. Gottsacker v. Monnier, 2005 WI 69, ¶14, 281 Wis. 2d 361, 697 N.W.2d 436. Therefore, their interests may not be conflated into one entity even though Pagoudis solely owns both Sead and Kearns.

¶83 As we also do not have the operating agreements for Sead or Kearns, we do not know exactly what Pagoudis contributed to either one. Therefore, we cannot ascertain with certainty whether either suffered injury due to the Keidls' interactions with Pagoudis. And finally, if Pagoudis transferred only his contractual interest in the Property to Sead based on the sale contract's stated value and if that value, while held by Sead, diminished, Pagoudis's personal property interest in Sead also may have diminished.[29] LLCs and LLPs: A Wisconsin Handbook, § 4.8. None of these questions can be answered based solely on the Amended Complaint. However, our process when faced with a motion to dismiss for failure to state a claim begins and ends with the Amended Complaint.

### III. CONCLUSION

---

[28] Id.

[29] The type of injury alleged would not produce duplicative damages, because only one set of damages for the Keidls' interaction with Pagoudis is possible. See Jones v. Secura Ins. Co., 2002 WI 11, ¶3, 249 Wis. 2d 623, 638 N.W.2d 575. However, at this point in the litigation, I cannot determine where the ultimate injury occurred.

11

¶84 Because the Amended Complaint alleges facts that, if proved true, state claims for intentional misrepresentation, strict liability for misrepresentation, violations of Wis. Stat. §§ 895.446 and 943.20 and false advertising pursuant to Wis. Stat. § 100.18 by the Keidls, Pagoudis should be permitted to proceed further in developing facts relevant to those claims.

¶85 Furthermore, as I explained above, such claims generally are assignable, but the Amended Complaint does not allege that they were assigned to either Sead or Kearns and therefore, they likely remain with Pagoudis. And finally, if Sead or Kearns are worth less than the dollar amount that Pagoudis placed into them due to actions of the Keidls, the value of his personal property interests in those entities may have been injured. Accordingly, because the possibilities in regard to injury and valuation are myriad, I would affirm the court of appeals, and I respectfully dissent from the majority opinion's dismissal of claims made by Pagoudis and Kearns.

¶86 REBECCA GRASSL BRADLEY, J. *(concurring in part, dissenting in part).* In the mid-1500s, the Pope commissioned Michelangelo to paint a depiction of The Last Judgment in the Sistine Chapel. As was customary at the time, Michelangelo included nudity in his work. Because the sensibilities of a prominent cardinal were offended, the Pope ordered Michelangelo to cover the nudity of religious figures. He did, marking the beginning of the infamous "Fig Leaf Campaign." The Council of Trent scoured Rome in search of nude sculptures, ordering metal fig leaves placed over many depictions of genitalia. Recently, efforts have been made to restore some of the art to its original form.

¶87 On occasion, this court has taken a chisel to statutes that have offended some justices' sensibilities. While we may employ "tools" of construction, a chisel is not a legitimate tool for judges. The legislature writes law and the judiciary interprets and applies it. A statute, like a statue, is supposed to be viewed in its original form.

¶88 One statute subjected to judicial reshaping is Wis. Stat. § 100.18(1) (2019-20). It states, in relevant part:

> No person . . . with intent to sell . . . or in any wise dispose of any real estate . . . to the public . . . or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase . . . of any real estate, . . . shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice,

1

> handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase . . . of such real estate . . . or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

§ 100.18(1) (emphasis added). In a series of cases, this court has castrated the plain meaning of this statute by taking a chisel to the phrase "the public." See generally Hinrichs v. DOW Chem. Co., 2020 WI 2, 389 Wis. 2d 669, 937 N.W.2d 37. This court has previously held, "a statement that was made to only one individual could qualify for the protections afforded by § 100.18," equating a statement directed to "the public" with a statement directed solely to a single person who is, as people tend to be, a member of "the public[.]" See Below v. Norton, 2008 WI 77, ¶6, 310 Wis. 2d 713, 751 N.W.2d 351 (citation omitted). As I have previously explained in a more thorough analysis, a "particularized statement[]" to a single person "within the context of . . . [an] ongoing business relationship" is not a statement made to "the public." Hinrichs, 389 Wis. 2d 669, ¶94 (Rebecca Grassl Bradley, J., concurring/dissenting). This court's objectively wrong precedent should be overturned. See Manitowoc Co. v. Lanning, 2018 WI 6, ¶81 n.5, 379 Wis. 2d 189, 906 N.W.2d 130 (Rebecca Grassl Bradley, J., concurring) ("Reflexively cloaking every judicial opinion with the adornment of stare decisis threatens

2

the rule of law, particularly when applied to interpretations wholly unsupported by the statute's text.").

¶89 The majority opinion accords with the law except for its conclusion that Sead LLC's claim under Wis. Stat. § 100.18(1) survives. See majority op., ¶33. The majority errs in holding "the Keidls made a representation to 'the public' by making representations in the . . . [Real Estate Conditions Report] to a potential buyer, Sead[.]" Id. The plain statutory language does not extend to representations made solely to the buyer during a private real estate transaction.[1] Accordingly, I respectfully concur in part and dissent in part.

---

[1] The economic loss doctrine may bar recovery for certain misrepresentation claims in this case, but the issue has not been argued to this court. See generally Wis. Civil──JI 2400, at 4 (2023) (explaining the doctrine "requires transacting parties in Wisconsin to pursue only their contractual remedies when asserting an economic loss claim").

3