COURT OF APPEALS
DECISION
DATED AND FILED

September 13, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1742**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV150

IN COURT OF APPEALS
DISTRICT II

---

WINDOW WELL EXPERTS, INC.,

PLAINTIFF-APPELLANT,

V.

SAFETY WELL, INC., DYNE, INC. AND ROY BEAUDOIN,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Reversed and cause remanded with directions*.

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Window Well Experts, Inc. appeals from an order dismissing its claims against Roy Beaudoin, which arise out of a failed business transaction, under WIS. STAT. § 802.06(2)(a)6. (2021-22).[1] Window Well also challenges the circuit court's decision, before it dismissed the claims, to grant Beaudoin's motion to reopen a default judgment that it had entered against him after he failed to respond timely to the complaint.[2] We reverse the order granting the motion to dismiss because the circuit court erroneously concluded that Window Well's conversion and civil theft claims were barred by an indemnification provision in a contract between Window Well and two companies owned by Beaudoin. In addition, we disagree with the circuit court's conclusion that Window Well's complaint fails to allege facts sufficient to plausibly allege a basis for holding Beaudoin personally liable for his companies' breach of the contract. Finally, we conclude that the circuit court erroneously exercised its discretion in granting Beaudoin's motion to reopen the default judgment because it did not make sufficient findings of fact or consider all of the factors relevant to the question of whether relief from judgment for excusable neglect is appropriate under WIS. STAT. § 806.07(1)(a). We remand this case for further consideration of Beaudoin's motion to reopen.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Window Well's notice of appeal refers only to the order granting Beaudoin's motion to dismiss, but the parties also briefed the issue of whether the circuit court erred in granting the motion to vacate the default judgment. We can and will consider this issue since its resolution is closely related to the court's decision to grant Beaudoin's motion to dismiss. *See* WIS. STAT. RULE 809.10(4) ("An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon.").

## BACKGROUND

### I.    Allegations in the Complaint

¶2    Joseph Sikorski is the sole owner and shareholder of Window Well, a Wisconsin corporation.  Roy Beaudoin is the sole owner and shareholder of Safety Well, Inc. and Dyne, Inc., which are Illinois corporations.  Window Well, Safety Well, and Dyne each manufacture and sell window-well covers and other products.

¶3    In the fall of 2020, Sikorski learned that Beaudoin might be looking to sell the assets of Safety Well and Dyne.  Sikorski contacted Beaudoin, and the two began working on the terms of a Letter of Intent under which Window Well would purchase the assets of both corporations.  On October 15, 2020, Sikorski and Beaudoin signed the Letter of Intent on behalf of their respective corporations.  Per its terms, Window Well would purchase the assets of Safety Well and Dyne for $720,000 and the companies' inventory for a projected price of $480,000, subject to adjustment at closing.  Window Well would pay $250,000 in cash at closing (less $10,000 due at the time the parties signed the Letter of Intent) and sign three promissory notes to pay the rest of the purchase price over time.

¶4    The parties then began drafting an Asset Purchase Agreement (the APA), which Sikorski and Beaudoin signed on October 27, 2020.[3]  The APA itemized the equipment and assets that Safety Well and Dyne would transfer to Window Well at closing, which was scheduled for November 4, and stated that

---

[3] The Letter of Intent and the Asset Purchase Agreement are attached to Window Well's complaint and are thus part of it.  *See* WIS. STAT. § 802.04(3).

Beaudoin would "reasonably assist" in transitioning Safety Well's and Dyne's customers and business assets to Window Well. Consistent with the Letter of Intent, the APA stated the purchase price of $720,000 for the business assets and the projected $480,000 for inventory. The APA also made closing contingent on Safety Well, Dyne, or Beaudoin providing financing to Window Well via the three promissory notes. Finally, the APA acknowledged that Window Well had already paid $10,000, which would be refundable if Safety Well and Dyne defaulted on its obligations under the agreement.

¶5      The APA also contains an indemnification provision that reads in relevant part as follows:

> The parties hereby agree to indemnify, defend[,] and hold each other harmless, including but not limited to, Mr. Roy Beaudoin and Mr. Joe Sikorski, individually, from and against all claims asserted against, resulting to, imposed upon[,] or incurred by any such entity or person, directly or indirectly, by reason of or resulting from (a) the inaccuracy or breach of any representation or warranty contained in or made pursuant to this Agreement; (b) the breach or default in the performance of any covenant, obligation, or agreements contained in or pursuant to this Agreement; or (c) all Claims of or against one party which were specifically assumed by the other party contained in or pursuant to this Agreement.

¶6      Finally, the APA contains a general good faith and cooperation clause that states that the parties "covenant, warrant[,] and represent to each other good faith, complete cooperation, due diligence[,] and honesty in fact in the performance of all obligations of the parties pursuant to this Agreement. All promises and covenants are mutual and dependent."

¶7      On November 2, 2020, Beaudoin signed two Bills of Sale, assigning Safety Well's and Dyne's interests in their respective business assets to Window

4

Well.  The following day, Window Well wired the $240,000 in cash due at closing to the trust account of Beaudoin's counsel.  Beaudoin, however, did not transfer possession of the assets to Window Well and refused several requests from Sikorski to do so.  Instead, Window Well alleges, Beaudoin "or an entity in which he has an ownership interest" retains possession of the assets.  Beaudoin, Safety Well, and Dyne have also refused to return any of the money paid by Window Well in connection with the transaction.

## II.    Procedural History

¶8      In March 2021, five months after the closing was to occur, Window Well filed a complaint against Safety Well, Dyne, and Beaudoin alleging the following claims:

> (1) a breach of contract claim against Safety Well and Dyne;

> (2) a claim against Beaudoin under the "alter ego doctrine" that alleges that Beaudoin "exercises complete and sole control" over Safety Well and Dyne and used that control "to perpetuate the violation of a legal duty, or a dishonest and unjust act in contravention [of] WINDOW WELL'S legal rights";

> (3) a claim for conversion against all of the defendants based on their intentional retention of Window Well's property without authority or Window Well's consent;

(4) a claim of civil theft under WIS. STAT. § 943.20[4] against all of the defendants based on the same conduct; and

(5) an unjust enrichment claim against Beaudoin based on his alleged acceptance and retention of a "benefit conferred by WINDOW WELL" "under circumstances that it would be inequitable for BEAUDOIN to retain the benefit."

¶9 At some point after "th[e] deal went south and soured," Beaudoin moved from Illinois to Florida. To accomplish service of process, Window Well arranged for the sheriff in Beaudoin's county of residence to deliver copies of the summons and complaint to Beaudoin's wife at their residence on June 7, 2021. This made Beaudoin's deadline to answer the complaint July 22, 2021. *See* WIS. STAT. § 802.06(1)(a). That deadline was later extended by agreement of the parties to August 5, 2021, and then again to Friday, August 6.

¶10 On August 3, 2021, the circuit court entered an order finding that the case had "not been diligently prosecuted" and set the case for dismissal without prejudice in twenty days "unless good cause is shown … why this order should not take effect." In response to that order, Window Well filed a letter explaining that Beaudoin's answer deadline had been extended until August 6 and asked that the "case be removed from the dismissal calendar." In the letter, Window Well also advised the court that the service on Beaudoin's wife was not proper as to Safety Well and Dyne and that because the deadline in which to accomplish service had

---

[4] WISCONSIN STAT. § 943.20 is a criminal statute, but intentional conduct that violates the statute may serve as the basis for a civil cause of action under WIS. STAT. § 895.446(1).

passed, Window Well "appear[ed] to have no other choice but to dismiss this case against the corporations[.]"[5]

¶11    Beaudoin did not file an answer on August 6, 2021; instead, at some point, Beaudoin's out-of-state counsel informed Window Well that Beaudoin's answer would be filed the following Monday, August 9. On August 10, Beaudoin's local counsel filed a notice of retainer and a motion to admit Beaudoin's out-of-state counsel pro hac vice, but not an answer. On August 12, Window Well's counsel informed both of Beaudoin's attorneys that it would file a motion for default if Window Well did not receive an answer by August 13.

¶12    The parties' attorneys exchanged multiple emails on August 13. The first, from Beaudoin's out-of-state counsel, stated: "I never said I would file an Answer to your flawed complaint. What I said is that I would appear, two distinct differences. Please don't misrepresent our conversations." Window Well's counsel then forwarded to Beaudoin's out-of-state counsel the email Beaudoin's out-of-state counsel had sent on July 22, which referenced the first extension to file "responsive pleadings" by August 5. In response, Beaudoin's out-of-state counsel wrote: "Responsive pleadings is [sic] different from an Answer." Window Well's counsel then informed Beaudoin's out-of-state counsel that Window Well would file its motion for default.

¶13    On August 16, 2021, Window Well filed a motion for default judgment. That same day, Beaudoin filed a motion seeking to vacate default and

---

[5] Though no order was ever filed dismissing the claims against Safety Well and Dyne after Window Well filed the letter, the circuit court stated at a subsequent hearing that "Safety Well and Dyne[] were dismissed from the case for lack of service and that left only [Beaudoin]."

extend his time to file a response to the complaint. Beaudoin asserted that his delay stemmed from "determining whether to contest personal jurisdiction" and "seek[ing] local counsel to file his appearance pro hac vice[.]"

¶14    At a hearing on December 17, 2021, the circuit court[6] stated that Beaudoin appeared to be in default because he had not timely filed an answer. Believing it lacked authority to extend Beaudoin's answer deadline, the court focused on his motion to vacate, specifically on the ground of excusable neglect under WIS. STAT. § 806.07(1)(a). Citing our discussion of excusable neglect in *Mohns, Inc., v. TCF National Bank*, 2006 WI App 65, ¶¶9-10, 292 Wis. 2d 243, 714 N.W.2d 245, the court stated that it had to consider "whether the moving party has acted promptly to remedy the default judgment, whether the default judgment imposes excessive damages, and whether vacatur of the judgment is necessary to prevent a miscarriage of justice." Beaudoin argued, among other things, that a default judgment would constitute a miscarriage of justice because Beaudoin signed the APA on behalf of his corporations and "[t]here's no personal liability because the parties didn't intend to be personally bound." His out-of-state counsel also explained that he "wasn't prepared to do an answer" because he had not decided whether to file a motion to dismiss. At the end of the hearing, the court granted Window Well's motion for default judgment, invited Beaudoin to file a motion to "reopen" the default, and ordered the parties to submit briefs regarding "whether Mr. Beaudoin has personal liability in this action."

---

[6] The Honorable David M. Reddy presided at the December 17, 2021 hearing.

¶15     On April 19, 2022, the circuit court held a hearing regarding Beaudoin's motion to reopen and the issue of Beaudoin's individual liability.[7] The court reviewed Wisconsin's law of corporate limited liability, noting that "the legal fiction of a corporation is not one to be lightly disregarded[.]"  The court also stated that it saw "issues, factual issues, with respect to whether individual liability can lie under [the] piercing the corporate veil concept."  Given this uncertainty, the court concluded that Beaudoin "deserve[d] to have his day in court" in the interest of "fairness and the prevention of a potential miscarriage of justice[.]"  The court also stated that Beaudoin had acted promptly to remedy the default and that the case had not progressed to an award of damages, which weighed in favor of vacating the default.  Based upon these determinations, the court concluded that Beaudoin had shown excusable neglect, vacated the default judgment, and ordered him to file his answer by April 26, 2022.

¶16     Beaudoin timely filed his answer and then, on June 15, 2022, filed a motion to dismiss the claims against him pursuant to WIS. STAT. § 802.06(2)(a)6.  Beaudoin raised two arguments in the motion.  First, he argued that he had not acted in a personal capacity, but rather as president of both corporations, in connection with the transaction and thus could not be held personally liable to Window Well.  Second, Beaudoin argued that the indemnification provision in the APA barred all of Window Well's claims against him.

¶17     The circuit court held a hearing on September 7, 2022, at which it granted Beaudoin's motion.[8]  The court stated that Window Well's "claims

---

[7] Judge Reddy presided at the April 19, 2022 hearing.

[8] The case was assigned to the Honorable Kristine E. Drettwan effective August 1, 2022. Judge Drettwan entered the court order granting Beaudoin's motion to dismiss.

essentially boil down to an alleged breach of contract" by Safety Well and Dyne and that Beaudoin signed the transaction documents in his capacity as a representative of those entities, a "point that I think shines strongly for the court here." Next, the court looked to the indemnification provision in the APA, stating that it "explicitly and specifically states and agrees between … the three corporate entities here that all of the corporations involved, their individual officers and signatories to the agreements were to be held harmless." The court noted further that such provisions "are valid and are not contrary to public policy" and that the provision barred Window Well's claims because it specifically held Beaudoin personally harmless and both he and Sikorski "received the benefit of that bargain when they—when the corporations agreed to it and signed those contracts[.]" Additionally, the court discerned "little in the complaint" that would "justify[] piercing the corporate veil," stating that Beaudoin's status as sole shareholder of Safety Well and Dyne "[didn't] change the legal ramification of the fact that these are corporations" and "that the legal fiction of a corporation is not one to be lightly disregarded" under Wisconsin law. Even construing the allegations in the light most favorable to Window Well, the court saw no "facts or conditions under which [Window Well] … can recover personally against … Beaudoin" and no facts that would support piercing the corporate veil.

## DISCUSSION

### I.      Standard of Review

¶18     We review a circuit court's decision to grant a motion to dismiss for failure to state a claim de novo. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. We take the well-pleaded factual allegations in the complaint as true and draw reasonable inferences from

the facts in Window Well's favor.  *See id.*, ¶19; ***Pagoudis v. Keidl***, 2023 WI 27, ¶9, 406 Wis. 2d 542, 988 N.W.2d 606.  To survive a motion to dismiss, the well-pleaded factual allegations must "plausibly suggest a violation of applicable law." ***Data Key Partners***, 356 Wis. 2d 665, ¶21.  Legal conclusions in the allegations, however, are not given deference.  ***Pagoudis***, 406 Wis. 2d 542, ¶9.

¶19     A circuit court's decision to grant relief from a default judgment under WIS. STAT. § 806.07(1)(a) is reviewed for an erroneous exercise of discretion.  ***Fritz v. Fritz***, 231 Wis. 2d 33, 39, 605 N.W.2d 270 (Ct. App. 1999). "A proper exercise of discretion occurs when the court's determination is reasonably based on facts in the record and founded on proper legal standards." ***Id.***; *see also* ***Lane v. Sharp Packaging Sys., Inc.***, 2002 WI 28, ¶19, 251 Wis. 2d 68, 640 N.W.2d 788 ("We will sustain a discretionary act if … the [circuit] court examined the relevant facts, applied a proper standard of law, and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach.").  "Whether the circuit court utilized the proper legal standard, however, is a question of law we review independently of the circuit court[.]"  ***Lane***, 251 Wis. 2d 68, ¶19.

## II.     Motion to Dismiss

¶20     The circuit court gave two reasons for dismissing the claims asserted against Beaudoin:   (1) the indemnification provision in the APA; and (2) the absence of a factual basis in the complaint to pierce the corporate veil and hold Beaudoin liable for his companies' alleged breach of the agreement.  Window Well challenges both conclusions, which we address separately below.

### A. Indemnification Provision

¶21   Window Well argues that the indemnification provision does not compel dismissal of its claims against Beaudoin for two reasons.[9]   First, it contends that the provision does not, as a matter of public policy, bar claims for intentionally tortious conduct.   We agree.   Parties are generally free in Wisconsin to incorporate indemnification provisions into their contracts, but the operation of such provisions can be limited by countervailing interests.   Of import here, "[a] [contractual] term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."   *Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶11, 274 Wis. 2d 719, 685 N.W.2d 154 (first alteration in original; quoting RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (AM. L. INST. 1981)).

¶22   In *Finch*, the Finches entered into agreements to lease property they owned to a corporation "formed and controlled" by Ford Motor Company that would operate car dealerships on the property.   *Finch*, 274 Wis. 2d 719, ¶¶2-3.   The leases contained provisions purporting to foreclose any recourse against Ford or its directors for any claim or obligation arising under the leases.   *Id*., ¶5.   The subsidiary later ceased conducting business and making lease payments to the Finches, prompting them to sue Ford and three directors for intentionally interfering with the subsidiary's performance under the leases.   *Id*.   The circuit court dismissed the Finches' claim because of the nonrecourse clause, but we reversed, concluding that "an exculpatory clause, though otherwise valid as

---

[9] Window Well does not argue that its claims fall outside the scope of the indemnification provision's terms.  We thus assume for the purpose of this opinion that Window Well's claims are within the provision's reach.

applied to some causes of action, cannot operate to relieve a party from the consequences of intentional or reckless conduct." *Id.*, ¶23.

¶23 This principle applies here. Window Well's complaint includes two claims against Beaudoin—conversion and civil theft—that require proof of intentional misconduct. Conversion is the intentional taking or control of another's property without consent that interferes with the other's right to possess the property. *H.A. Friend & Co. v. Professional Stationery, Inc.*, 2006 WI App 141, ¶11, 294 Wis. 2d 754, 720 N.W.2d 96. Similarly, civil theft under WIS. STAT. § 943.20 requires proof that a "[d]efendant intentionally used, transferred, or retained possession of movable property of another" knowing he lacked the owner's consent to do so and intended to permanently deprive the owner of possession of the property. *Estate of Miller v. Storey*, 2017 WI 99, ¶40, 378 Wis. 2d 358, 903 N.W.2d 759.

¶24 In the complaint, Window Well alleges that Beaudoin and his companies committed conversion and theft by intentionally retaining and refusing to relinquish possession of property belonging to Window Well. That Beaudoin allegedly engaged in this conduct in his capacity as the sole owner and shareholder of Safety Well and Dyne does not shield him from liability; an individual may be held liable for intentionally tortious acts, even if committed while acting on a corporation's behalf. *See Oxmans' Erwin Meat Co. v. Blacketer*, 86 Wis. 2d 683, 692, 273 N.W.2d 285 (1979). Window Well's conversion and civil theft claims are premised on allegations of intentional misconduct that, if proven, would not be barred by the indemnification provision in the APA. The circuit court erred in reaching a contrary conclusion.

¶25    That leaves two claims against Beaudoin potentially barred by the indemnification provision—alter ego and unjust enrichment. Window Well's second argument is that Safety Well and Dyne's breach of the APA excuses Window Well's obligation to indemnify Beaudoin. In Wisconsin, "a material breach by one party to a contract excuses subsequent performance by the other party." *Entzminger v. Ford Motor Co.*, 47 Wis. 2d 751, 755, 177 N.W.2d 899 (1970); *see also* *Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996). Not every breach will excuse future performance; the breach must be "so serious … as to destroy the essential objects of the contract." *Management Comput. Servs.*, 206 Wis. 2d at 183 (citation omitted). "Moreover, even where such a material breach has occurred, the nonbreaching party may waive the claim of materiality through its actions." *Id.* at 183-84.

¶26    Window Well's allegations suggest a breach of the APA by Safety Well and Dyne that meets the standard for materiality. Distilled to its essence, the APA memorializes a straightforward transaction under which Window Well was to receive certain assets and inventory belonging to Safety Well and Dyne in exchange for a payment of $250,000 at closing and Window Well's execution of promissory notes for payment of the rest of the purchase price over time. Though the APA includes other promises and agreements, including Window Well's promise to indemnify Beaudoin, the exchange of money and promissory notes for assets and inventory is the crux of the parties' bargain. Window Well alleges that Safety Well and Dyne have failed to deliver on the core element of the bargain because they have held onto both their assets and inventory and the $250,000 paid by Window Well to date. If Window Well proves that allegation, a factfinder

could determine that it "destroy[ed] the essential objects of the contract" and thus constitutes a material breach. *See id.* at 183 (citation omitted).

¶27 Ultimately, however, we are unable to reach a firm conclusion as to whether that material breach would excuse Window Well's obligation to indemnify Beaudoin because we have only the allegations in the complaint before us and because of certain language in the indemnification provision. Specifically, the provision states that the parties agree "to indemnify, defend and hold each other harmless, including but not limited to, Mr. Roy Beaudoin and Mr. Joe Sikorski … from and against all claims … resulting from … (b) the breach or default in the performance of any covenant, obligation, or agreements contained in or pursuant to this Agreement[.]" By this language, the parties promised to indemnify and hold each other (and Beaudoin and Sikorski) harmless from any claim that they breached the APA. Put differently, the parties have agreed not to sue each other (or Beaudoin and Sikorski) for breach. It is thus unclear to us whether a material breach by Safety Well and Dyne would excuse Window Well's promise to indemnify and hold Beaudoin and his companies harmless. The parties do not address this question in their briefs on appeal and did not address it in the circuit court.[10] Accordingly, we conclude that the prudent course of action is to allow the parties to brief this issue on remand, if appropriate, and for the circuit court to consider the issue in the first instance.

---

[10] Window Well argued in the circuit court that the indemnification clause did not preclude it from asserting claims against Safety Well, Dyne, and Beaudoin, claiming that such an interpretation of the language "makes no sense." But that is what the clause appears to do: it requires each side to "indemnify, defend and hold [the other side] harmless … from and against *all claims* … resulting from" the breach of "any covenant, obligation, or agreements" in the APA. No language in the provision carves out claims each side may assert against the other for a breach of the agreement.

15

**B. Alter Ego/Veil Piercing**

¶28    Window Well contends that its allegations are sufficient to establish a basis to pierce the corporate veil and hold Beaudoin liable for his companies' breach of the APA. In Wisconsin, corporations are recognized as separate legal entities from their shareholders and are "treated as such under all ordinary circumstances." *Consumer's Co-op of Walworth Cnty. v. Olsen*, 142 Wis. 2d 465, 474, 419 N.W.2d 211 (1988) (citation omitted). The legal fiction of the corporate form, which "is not one to be lightly disregarded," shields shareholders from personal liability for corporate liabilities. *Id.* In certain circumstances, however, Wisconsin law allows for "'piercing of the corporate veil' or, stated otherwise, 'disregarding the corporate fiction'" in order to hold a shareholder personally liable. *Id.* at 475 (citation omitted). One such circumstance is when the corporation functions as the mere "alter ego" of the shareholder. *See id.* at 484. Liability under the alter ego doctrine requires proof of three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or [a] dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* (citation omitted).

¶29    We conclude at this early stage of the case that the complaint contains sufficient allegations to plausibly suggest a basis to pierce the corporate veil and impose personal liability. The complaint alleges that Beaudoin is the sole

owner and shareholder of Safety Well and Dyne and that he "exercises complete and sole control" over their "business practices and decisions." The allegations also suggest that Beaudoin exercised that "complete and sole control" over Safety Well and Dyne with respect to the transaction at issue in this case. Window Well identifies Beaudoin as the sole negotiator on behalf of those entities with respect to the deal terms. Beaudoin also signed the Letter of Intent, the APA, and the Bills of Sale on their behalf. Window Well alleges further that although Beaudoin signed the Bills of Sale, which "convey[ed] ownership" of the assets and equipment of his companies to Window Well, he has exercised control over the companies to prevent them from transferring physical possession of the assets and equipment and has caused them to retain the $250,000 paid by Window Well prior to closing. We agree with Window Well that it is reasonable to infer from these allegations that Beaudoin used his control over Safety Well and Dyne to commit a "dishonest and unjust act in contravention of" Window Well's rights under the APA. *See Consumer's Co-op*, 142 Wis. 2d at 484.

¶30 We emphasize that we are only scrutinizing the allegations in the complaint and that Window Well will bear the burden of proving that the circumstances surrounding this transaction warrant the equitable remedy of veil piercing. The rule of limited shareholder liability is firmly established in Wisconsin law, whereas "[t]he doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances[.]" *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). We conclude only that the well-pleaded factual allegations in the complaint, together with reasonable inferences therefrom, plausibly allege a basis to do so.

### III. Motion to Reopen Default Judgment

¶31 We next examine the circuit court's decision to grant Beaudoin relief from the default judgment. Beaudoin argued that he was entitled to that relief under WIS. STAT. § 806.07(1)(a) because his failure to timely answer the complaint was the result of excusable neglect. A party seeking to vacate a default judgment pursuant to § 806.07(1)(a) must not only demonstrate that the judgment is the result of mistake, inadvertence, surprise, or excusable neglect; the party must also show a meritorious defense to the action—that is, one that could survive a motion for judgment on the pleadings. *See* ***J.L. Phillips & Assocs., Inc. v. E&H Plastic Corp.***, 217 Wis. 2d 348, 358, 577 N.W.2d 13 (1998); ***Shirk v. Bowling, Inc.***, 2001 WI 36, ¶19, 242 Wis. 2d 153, 624 N.W.2d 375.

¶32 "Excusable neglect is 'that neglect which might have been the act of a reasonably prudent person under the same circumstances.'" ***Mohns***, 292 Wis. 2d 243, ¶9 (quoting ***Hedtcke v. Sentry Ins. Co.***, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982)). It is different from "neglect, carelessness or inattentiveness." ***Shirk***, 242 Wis. 2d 153, ¶18 (citation omitted). In addition to evaluating the reasons for the default, a circuit court must consider other factors, including "whether the moving party has acted promptly to remedy the default judgment, whether the default judgment imposes excessive damages, and whether vacatur of the judgment is necessary to prevent a miscarriage of justice." ***Mohns***, 292 Wis. 2d 243, ¶10. In addition, the court "must also consider that the law favors the finality of judgments, and the reluctance to excuse neglect when too easy a standard for the vacatur of default judgments would reduce deterrence to litigation-delay." ***Id.***

¶33    The circuit court considered Beaudoin's motion at the December 2021 and April 2022 hearings. The transcripts from those hearings indicate that in granting the motion, the court placed significant weight on the need to avoid a miscarriage of justice. On that point, the court spent a significant portion of the December 2021 hearing discussing whether Window Well could assert a claim against Beaudoin for alter ego liability, going so far as to ask the parties to brief that issue. Then, at the April 2022 hearing, the court reviewed the law regarding limited shareholder liability as set forth in *Consumer's Co-op*, including our state's reluctance to disregard the corporate form. Following this discussion, the court concluded "that fairness and the prevention of a potential miscarriage of justice warrant[ed] vacating the default judgment[.]"

¶34    The circuit court's analysis as to the other factors relevant to excusable neglect and relief under WIS. STAT. § 806.07(1)(a) was perfunctory or nonexistent. First and foremost, the circuit court made no findings of fact as to why Beaudoin did not timely answer the complaint. It made no mention of the communications and other acts of Beaudoin's counsel before Window Well moved for a default judgment. Nor did it offer any reasoned explanation as to why Beaudoin's neglect in not serving and filing an answer, despite having been given multiple extensions of time to do so and despite at one point denying he ever said he would do so, was "the act of a reasonably prudent person under the same circumstances." *See Mohns*, 292 Wis. 2d 243, ¶9 (citation omitted).

¶35    Turning to the other relevant factors, the circuit court determined that Beaudoin had "acted promptly to remedy the default judgment," but it did not identify any facts to support that determination. In addition, the court did not discuss multiple other factors such as the interest in preserving the finality of judgments and the interest in not creating incentives for delay.

19

¶36 To be upheld, an exercise of discretion must rest on a demonstrated application of the correct legal standards to the relevant facts and the use of logic and reasoning to reach a reasonable conclusion. *See **Estate of Burgess v. Peterson***, 214 Wis. 2d 180, 186-87, 571 N.W.2d 432 (Ct. App. 1997). Here, the circuit court did not discuss whether Beaudoin's neglect was excusable and did not reference other factors relevant to the issue of whether relief from default was appropriate under WIS. STAT. § 806.07(1)(a). The erroneous analysis as to whether Beaudoin had a meritorious defense and the omissions discussed above lead us to conclude that the circuit court erroneously exercised its discretion in granting Beaudoin's motion.

## CONCLUSION

¶37 For the reasons stated above, we reverse the circuit court's decision to reopen the default judgment and the order granting Beaudoin's motion to dismiss. We remand this matter to the circuit court to re-examine the facts relevant to Beaudoin's motion to reopen in light of the legal standards governing excusable neglect and relief from judgment under WIS. STAT. § 806.07(1)(a). The court should make a record of its factual findings and its reasoning as to whether those facts meet the standard for excusable neglect and, if so, how the other factors weigh in favor of or against relief from the default judgment. If the court finds relief proper, the court should then, if the parties request it, address the question of whether the rule of material breach excuses Window Well's performance of its indemnity obligation and thus precludes Beaudoin from relying on the provision as a basis for dismissal of Window Well's alter ego and unjust enrichment claims.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.